### J. I. McNEELY v. THE STATE.

No. 3537.   Decided October 10, 1906.

**1.—Injuring and Breaking Fence—Agricultural Land—Statutes Construed.**

Where upon trial for breaking down and injuring the fence of another under article 794, Penal Code, an objection was raised on appeal that the land inclosed was not farming land as required under said article: held that this act originally contained a caption with reference to fences enclosing land used for agricultural purposes, but was brought forward in the Code without said caption.

and thus relates to all fences and is not circumscribed to fences around agricultural land. Besides the evidence showed that the land in question was used in connection with a pasture for a cow lot, the occupant of the premises being engaged in farming.

2.—Same—Joining and Disjoining Fences—Definition of Offense—Trespass.

In a prosecution for breaking down and injuring the fence of another, where the evidence showed that the defendant had objected to the prosecutor joining on to his fence, but that the latter had done so against his consent, protruding the poles of his fence through defendant's line fence, and using said line fence for his enclosure, and that the defendant had knocked loose the fence of prosecutor where it joined defendant's fence without notifying prosecutor. Held, that article 2501, Revised Civil Statutes, as to notice, did not apply, and defendant was not liable to a prosecution under article 794, Penal Code, for injuring the fence of prosecutor, as the prosecutor was a trespasser; and the requested charge submitting this issue should have been given.

Appeal from the County Court of Bosque. Tried below before the Hon. P. S. Hale.

Appeal from a conviction of unlawfully injuring the fence of another; penalty, a fine of $25.

The opinion states the case.

*Word & Pedigo,* for appellant.—On question of agricultural lands: Woodyard v. State, 19 Texas Crim. App., 516. On question of trespass by prosecutor: Klein v. State, 39 S. W. Rep., 369; Jamison v. State, 11 S. W. Rep., 483.

*J. E. Yantis,* Assistant Attorney-General, and *W. F. Schenck,* for the State. On question of division fence: Jamison v. State, 27 Texas Crim. App., 443; Penal Code, articles 797 and 798. On question of peaceful possession: Arbuthnot v. State, 34 S. W. Rep., 269; Carter v. State, 18 Texas Crim. App., 573; Behrens v. State, 14 id., 121; Jenkins v. State, 7 id., 146.

HENDERSON, Judge.—Appellant was convicted of breaking down and injuring the fence of the prosecutor, and his punishment assessed at a fine of $25, hence this appeal.

It is contended by appellant that the fence was not enclosing farming land set apart for agricultural purposes, and that consequently article 794, Penal Code, making it an offense to break or pull down the fence of another, without his consent, does not apply. Article 794 was enacted in 1873, and contained a caption with reference to fences used for agricultural purposes. Cleveland v. State, 8 Texas Crim. App., 44. The act is brought forward in the Code without said caption or any clause with reference to fences surrounding lands used for agricultural purposes: so that the article as it stands in our Code relates to all fences and is not circumscribed to fences around land for agricultural purposes. Aside from this it would appear that the close was used for agricultural purposes; used in connection with a pasture for a cow lot. The business of the occupant of the premises was farming. See agriculture as defined in Webster's Dictionary.

Appellant contends that he had a right to do what he did because the prosecutor, without his consent, joined his fence to that of appellant in making his cow lot, and all that he did was to disjoin said fence from his (prosecutor's) fence. The facts show, as proved by the State, that appellant owned a piece of ground, including his farm and pasture; that some four or five years subsequent to his purchase from the same owner, prosecutor purchased on his west side; that prosecutor built a cow lot against appellant's pasture fence, which was a two-wire fence: said cow lot being some twenty by thirty feet in dimensions. That at the point where the cow lot joined appellant's wire fence on the south side, where the alleged breaking occurred, the last panel of prosecutor's fence consisted of poles. The post next to appellant's fence was placed very close—almost jam up to it; and prosecutor nailed the poles of the panel on to this post. The poles protruded through appellant's fence about a foot. Prosecutor testified that this post of his was not tied to the post of appellant. However, appellant testified that this post to which the poles were nailed, was tied to his. He also testified that the poles protruded through his two-wire fence. Appellant testified that when he found prosecutor intended building his cow lot next to him, he went to see him and protested against prosecutor joining on to his fence for the cow lot, as he only had a two-wire fence there, and prosecutor's cattle would break through into his pasture. Prosecutor told him that he had intended joining on to him, but since he objected he would not do it. The fence, the alleged breaking of which is the cause of this prosecution, was broken, according to the testimony, at the southeast corner of the cow lot,—the poles being knocked loose, according to the State's evidence, except one. Appellant also says that he took the bale-wire loose from prosecutor's fence, which was tied on to his. Was this such a breaking of a fence as is not authorized by law, and was inhibited by our statute on the subject? Appellant claims that he had a right under the circumstances to take prosecutor's fence loose from his, while prosecutor claims that, although it be conceded that his fence was joined on to appellant's, appellant could not take it loose without notifying him under the statute. Revised Civil Statutes, article 2501. We do not believe said article applies in this case. It appears to be conceded that the west line of the fence between appellant and prosecutor belonged to appellant, although there is testimony from prosecutor that the common vendor had told him that it was on his land, and that he claimed the land, and he told appellant that the fence was on his land. However, we take it that appellant was in possession and was the actual owner of this fence. Did appellant join his fence? Evidently, according to the proof, which is not gainsaid, this fence constituted a part of prosecutor's enclosure, for without being utilized as such he had no cow lot, but would only have had three sides of such a lot. The effect of placing his fence was to use appellant's fence as the fourth side of his enclosure. He testified himself that

he placed his post close to appellant's post, and that the poles of his fence protruded through the line fence about a foot. We do not believe that he had any right to utilize appellant's fence without his consent. Appellant was certainly authorized to remove his fence so as to open the enclosure; but if he had moved it back he would have had to move more than a foot, because prosecutor had protruded his posts into his enclosure that distance. We do not believe the action of appellant under the circumstances rendered him liable to a prosecution under article 794 for injuring the fence of prosecutor. He removed the fence off of his own enclosure and disjoined the fence in that manner from his own, which the prosecutor had no right to place there against his consent. While Klein v. State, 39 S. W. Rep., 369, is not exactly in point, it has some bearing on this case. We hold that, under the circumstances in evidence, appellant's requested special instruction number 2 should have been given to the effect that when he found that prosecutor had committed a trespass on him by joining his fence to appellant's, appellant had the right to remove said fence by any means short of a breach of the peace.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*