AMERICAN INDEMNITY COMPANY v. CITY OF AUSTIN.

No. 3394.   Decided December 20, 1922.

(246 S. W., 1019.)

**1.—Constitution—Taxation—Insurance Companies—Securities Deposited with State.**

Article 4749, Revised Statutes (Section 38 of the Act of March 22, 1909, Laws, 31st Leg., ch. 108, p. 204), in providing that the *situs* of all personal property of domestic life insurance companies (extended to apply to other insurance companies by art. 4955, Rev. Stats.) for the purpose of State, coun-

ty, or municipal taxation, should be at the home office of such company, was not invalid as being in contravention of article 8, section 11, of the Constitution requiring personal property to be taxed in the county where situated, though applied to securities deposited with the Treasurer of the State in a county other than that of the company's home office. Great Southern Life Ins. Co. v. City of Austin, 112 Texas, 1, followed. (pp. 243, 244).

2.—Same—Unconstitutional Act—Caption of Statute—Reenactment by Revised Statutes.

Though section 55 of chapter 108 of the Act of March 22, 1909 (art. 4955, Rev. Stats.), was unconstitutional as originally enacted, because in violation of article 3, section 35 of the State Constitution, in that the subject of such section was not embraced in the title of the Act, its reenactment by the adoption of the Revised Statutes, as article 4955 thereof, cured such constitutional defect and made it valid. The personal property of a domestic health and accident insurance company was thereby made taxable in the county of its home office. (Rev. Stats., art. 4749). (pp. 244-254).

3.—Same.

The Legislature, in adopting a revision of the statutes, is, by article 3, section 43 of the Constitution, exempt from the requirements of article 3, sections 35 and 36, as to the matter of procedure, such as embracing the subject of an Act in its title. (p. 247).

4.—Same.

The Legislature, in adopting revisions of the Statutes, has plenary power to revise, and may do so by omitting previous laws, by changing words or phrases, by amending existing laws, or by the incorporation of new and material matter in the revision. (p. 248).

5.—Same—Legislative Construction.

Legislative construction of a constitutional provision is of substantial value in constitutional interpretation. The several revisions of the statutes by the Legislature, in 1879, 1895, and 1911, all assert and exercise the power of the Legislature, in so doing, to repeal existing laws and to introduce new provisions; and the history of codification in other countries is to the same effect. (pp. 248, 249).

6.—Cases Discussed.

State v. Burgess, 101 Texas, 524, and St. Louis S. W. Ry. Co. v. Hill & Morris, 97 Texas, 506, as to the effect of adopting revised statutes, approved and followed. Judd v. State, 25 Texas Civ. App., 418, 62 S. W., 543; National Surety Co. v. Murphy-Walker Co., 174 S. W., 997; Ocean Accident & Guar. Corp. Ltd. v. Northern Tex. Trac. Co., 224 S. W., 212; distinguished, and refusal of writs of error therein explained. (p. 252).

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Travis County.

The city sued the Indemnity Co. for recovery of taxes, and had judgment. Defendant appealed, and on affirmance (211 S. W., 812) obtained writ of error.

*Terry Caven & Mills*, for plaintiff in error.

The provisions of the last sentence of Section 38 of Chapter 108 of the Acts of 1909 being constitutional as held by the court below in the Great Southern case, and applying to all insurance companies

covered and governed by that Act, and it appearing from the court's findings of fact that the home office of appellant is in the City and County of Galveston, and never has been in the City of Austin, and appellant having authority under its charter to write and being incorporated for the purpose, among other things, of writing health and accident insurance, it is for all purposes arising out of, or governed by the Act of 1909, including the situs of its securities for purposes of municipal taxation a health and accident insurance company within the definition thereof provided by Section I of the Act of 1909, and the court erred in holding that the securities deposited by it with the State Treasurer were subject to municipal taxation by the City of Austin. Acts of 1909, Chapter 108, Sections 1, 38; Acts of 1911, Chapter 117, Section 5. (Article 4942-e, Vernon's Sayles' Civil Statutes.); Article 4930, Vernon's Sayles' Civil Statutes; G. H. & S. A. Ry. Co. v. Worthy, 27 S. W. 426; Jackson v. State, 19 Indiana, 312; State v. Schlenker, 112 Iowa, 642, 84 N. W., 698; Schultz v. Parker, 158 Iowa, 42; 139 N. W. 173; Herold v. State, 21 Neb., 50; 31 N. W., 258; People v. Bowman, 247 Ill., 276; 93 N. E., 244; Clay v. Central Ry. Co., of Ga., 84 Ga., 345, 10 S. E., 967; In re Coburn, 165 Cal., 202.

Admitting the invalidity or unconstitutionality of the section above quoted, as originally passed, as the same appears as Section 55 of the Act of 1909, it is our contention that any defect in this regard has been cured by the enactment of the Revised Statutes of 1911, and that Article 4955 is now a valid statute of the state and was valid during all of the years since the enactment of the Revised Statutes, and during which the taxes for which defendant in error sues in this cause accrued. American Natl. Ins. Co. v. Collins, 149 S. W., 554; Central of Ga. Ry. Co. v. State, 104 Ga., 831, 42 L. R. A., 518; Anderson v. Railway Co., 25 Idaho, 433; Kennedy v. Meara, 127 Ga., 68; State v. Towery, 143 Ala., 48; Ex parte Donnellan, 49 Wash., 460; 25 R. C. L., sec. 111, p. 867.

*J. Bouldin Rector,* City-Attorney, *J. W. Maxwell,* and *E. B. Robertson,* for defendant in error.

The trial court correctly held, as a matter of law, that the bonds and securities deposited by the defendant with the State Treasurer at Austin at the time defendant was granted a charter as a surety company and in compliance with the provisions of the Statute under which the defendant was incorporated, thereby acquiring a fixed, permanent situs in the City of Austin, distinct from the place of defendant's domicile, and were therefore subject to taxation by the City of Austin. Guaranty Life Insurance Company v. City of Austin, 190 S. W., 189; s. c., 165 S. W., 53; Hall v. Miller, 102 Texas, 289; State v. Fidelity & Dep. Co., 35 Texas Civ., App., 214, 80 S.

112 Tex.—16

W., 544; Jesse French Piano & Organ Co., v. City of Dallas, 61 S|
W., 943.

It has been decided by the Court of Civil Appeals at El Paso, in
the case of National Surety Company v. Murphy, 174 S. W., 997,
and by the Fort Worth Court of Civil Appeals in the case of Western
Indemnity Company v. F. & A. Masons, 198 S. W., 1092, that the
above mentioned Act of 1909 did not apply to a surety or indemnity
company for the reason that the caption of the Act of 1909 is not
sufficient to embrace anything but life, health, and accident insurance
companies incorporated or doing business under that Act.

Mr. Chief Justice CURETON delivered the opinion of the court.

The plaintiff in error, the American Indemnity Company, a private
corporation, was chartered on April 19, 1913, under Chapter 117 of
the General Laws of the Thirty-second Legislature of this State. It
was incorporated for the transaction of an insurance business, its ob-
jects and purposes being substantially all those named in Section 1
of said Chapter, which is Article 4942a Vernon's Complete Texas
Statutes. These purposes are set out in the opinion of the Court of
Civil Appeals, 211 S. W., 812, 814, and it is unnecessary to restate
them. It is sufficient to say that the purposes authorized by the stat-
ute embrace, among others, the usual objects of casualty insurance.
The home office of the company is, and has always been, in Galveston,
Galveston County, Texas. The City of Austin, in Travis County, is a
municipal corporation, chartered by special Act of the Legislature.
The City filed this suit against the plaintiff in error in the District
Court of Travis County on April 14, 1917, for the purpose of re-
covering taxes alleged to be due for the years 1914, 1915, and 1916,
on certain bonds and securities deposited by plaintiff in error with
the Treasurer of the State at Austin under the laws of the State.
The case was tried before the court without a jury on an agreed state-
ment of facts. The trial court rendered judgment on the 22d of De-
cember, 1917, in favor of the defendant in error for sums aggregating
$9,842.33, principal, interest, and costs of the taxes found by him to
be due for the years mentioned. The judgment also provided for a
foreclosure of the tax lien upon the securities found by the court to
have been on deposit with the State Treasurer on the first day of
January of each of the years mentioned. The case was appealed in
due form by the plaintiff in error to the Court of Civil Appeals,
which affirmed the judgment on April 16, 1919. A writ of error was
granted, and the cause is now before this Court for review.

The record shows that on January 1, 1914, the plaintiff in error
had on deposit with the Treasurer securities aggregating in value
$100,000.00, and on the first day of January of each of the years
1915 and 1916 sums in excess of $200,000.00. These several deposits

were in securities, interest bearing notes, and bonds, in which the company's assets had been invested, and were made under Articles 4930 and 4942e, Vernon's Sayles' Revised Statutes, for the benefit of the holders of the company's obligations and policies, for which purposes the Treasurer was required to receive them. The company, however, had the right to substitute other paper of equal character and value at any time, and to collect interest, dividends, and profits on all securities on deposit. Vernon's Complete Texas Statutes, Articles 4928, 4930, 4942e.

The contention of the City of Austin is that the taxable situs of these deposited securities is in Travis County; while the Indemnity Company asserts that they were taxable alone at its home office in Galveston County. There were other issues in the case, but this is the only one, under our view of the law, necessary to be considered.

Chapter 117, Acts of the Thirty-second Legislature, under which plaintiff in error was incorporated, was cumulative as to insurance legislation in the State, and as to the mode and manner of organizing and doing insurance business, and did not repeal any law then in force. Vernon's Complete Texas Statutes, Article 4942z.

The position of plaintiff in error is that the situs of these securities for purposes of taxation, as well as the manner of taxation, not being in express language provided for in the statutes under which the deposits were made, is fixed and determined by Revised Statutes, Articles 4749 and 4764. The last named Article is general in its terms, and provides a special method of taxation for insurance companies.

Article 4749, after authorizing for the deposit of securities in somewhat the same manner as do the statutes under which deposits were made in this case, provides:

"For the purpose of state, county and municipal taxation, the situs of all personal property belonging to such companies shall be at the home office of such company."

The plaintiff in error contends that it is subject alone to these two Articles as to the manner of rendering its taxes and as to the situs for taxation of the securities here involved. For each of the years named, it did in fact render and pay its taxes in Galveston County, in accordance with these Articles of the statute.

The first insistence of the defendant in error to be noted is that Article 4749, referred to above, fixing the situs for taxation of securities deposited with the State Treasurer at Austin, is unconstitutional, because in violation of Section 11, Article 8, of the Constitution of this State, which declares:

"All property, whether owned by persons or corporations, shall be assessed for taxation and the taxes paid in the county *where situated.*"

We have already determined this question adversely to this contention. This Article of the statute is constitutional. Great Southern Life Insurance Co. v. City of Austin, 112 Texas, 1, 243 S. W., 778, 785.

Articles 4749 and 4764 were originally parts of Chapter 108, General Laws of the Thirty-first Legislature, which Act on its face, and Article 4749 in particular, by express language relates to life, health, and accident insurance companies. Plaintiff in error asserts that it is to be governed by Articles 4749 and 4764, by virtue of Revised Statutes Article 4955, which reads:

"All the provisions of the laws of this state applicable to the life, fire, marine, inland, lightning, or tornado insurance companies, shall, so far as the same are applicable, govern and apply to all companies transacting any other kind of insurance business in this state, so far as they are not in conflict with provisions of law made specially applicable thereto."

This Article is broad enough in its terms to make plaintiff in error subject to and to give it the benefits of Articles 4749 and 4764, and make them the law which governs it in the rendition of its property for taxation and fixing the taxable situs of that property at Galveston, where its home office is located.

Defendant in error contends, however, that Article 4955 is unconstitutional and void, because its substance was not embraced in the caption of Chapter 108, Acts of the Thirty-first Legislature. The language of Article 4955 is the same as that of Section 55 of Chapter 108 of the Acts of the legislature named, and Articles 4749 and 4764 were respectively Section 38 and 25 of that Act. The caption of this Chapter is fully set out in the National Surety Company Case, cited below, and need not be repeated here.

We agree with the contention that the substance of Section 55, or of what is now Article 4955, was not embraced in the caption of this Act, and that, therefore, as originally passed said Section was unconstitutional and void, because in violation of Section 35, Article 3, of the State Constitution. Several of the Courts of Civil Appeals have made a similar holding for the same reason. National Surety Co. v. Murphy-Walker, 174 S. W., 997; Ocean Accident & Guaranty Corp. v. Northern Texas Traction Co., 224 S. W., 212; Western Indemnity Co. v. Free and Accepted Masons, 198 S. W., 1092.

But as to whether or not Article 4955 of the Revised Statutes of 1911 is unconstitutional presents an entirely different question, the answer to which is of serious import to the State, as well as of consequence to the parties to this litigation. Chapter 108, Acts Thirty-second Legislature, while passed in the form of an original bill, and in the absence of Section 55 thereof applicable only to life, health

and accident insurance companies, was in fact, as disclosed by an examination of its Sections, an amendment in many respects of the general insurance laws of the State, changing the language of some laws, amending others, repealing several, and adding new provisions general in their nature. An extensive review of its contents is not necessary, but we will call attention to some of its general features.

Section 69 of the Act repealed Articles 3049, 3047, 3050, 3051, 3052, 3053, 3085, and 3088, Revised Statutes 1895, all of which were general provisions.

Sections 40, 59, 66, 63, 64, 60, and 61, which became respectively Articles 4497, 4493, 4501, 4495, 4496, 4494, and 4763 of the Revised Statutes of 1911, were in reality mere amendments of the Articles of the Revised Statutes of 1895 above named, with the exception of the first thereof. The subject matter of the repealed Articles was covered in most, if not in all, respects by the new Sections substituted therefor, and were clearly intended as amendments.

Sections 12, 25, 40, 41, 46, 47, 48, 49, 50, 51, 53 55, 57, 58, 59, 60, 61, 62, 63, 64, 66, and Section 37 as amended by Chapter 20, General Laws of the First Called Session of the Thirty-first Legislature, were all apparently general provisions; at least they are general in their terms, and certainly many of them were intended to be general provisions, applicable not only to life, health, and accident insurance companies, but to others as well.

These Sections of the Act, with the exception of Section 37 as amended by Chapter 20, General Laws of the First Called Session of the Thirty-first Legislature (p. 322), which was not enacted until after the adoption of the Code, became Articles in the Revised Statutes of 1911, being respectively Articles 4736, 4764, 4497, 4500, 4761, 4970, 4971, Revised Civil Statutes, Penal Code Articles 689, 690, 691, Revised Civil Statutes 4499, 4955, 4772, Penal Code, 693, Revised Civil Statutes 4493, 4494, 4763, 4956, 4495, 4496, and 4501.

Sections 40, 41, 53, 59, 60, 63, 64, and 66 became respectively Articles 4497, 4500, 4499, 4493, 4494, 4495, 4496, and 4501, and were placed in Title 65 of the Revised Statutes, which relates to ''Heads of Departments'', and in Chapter 7, under the heading ''Commissioner of Insurance and Banking'', which prescribes the general duties of the Commissioner of Insurance and Banking.

We can not undertake to discuss all of these various Sections and Articles for the purpose of showing their general nature, but will refer to only two, which illustrate them all.

Article 4493, Revised Statutes of 1911, which was Section 40 of Chapter 108, heretofore named, and which in turn was an amendment of Article 3050 of the Revised Statutes of 1895, prescribes the general duties of the Commissioner of Insurance and Banking with reference to all classes of insurance companies. It is divided into

twenty different subdivisions, and requires the Insurance Commissioner to execute all laws respecting insurance and insurance companies; to file articles of incorporation and other papers relative to the insurance laws; calculate the net value of policies; see that in-insurance companies have assets ·sufficient to protect the policies invested in lawful securities; authorizes him to accept the valuation of securities made by insurance commissioners of other States; requires him to calculate the reserve on fire insurance policies; prescribes generally his duties with reference to re-insurance reserves; states his duties when the capital of insurance companies becomes impaired; authorizes him to make public the result of his examination of any insurance company; gives him authority to revoke certificates of companies which do not comply with the law; makes it his duty to report to the Attorney General violations of the insurance laws; authorizes him to furnish insurance companies with blank forms for reports; requires him to keep records of proceedings and a statement of the condition of companies examined by him; give certified copies of documents; report annually to the Governor; send copies of his reports to insurance commissioners of other States; etc.

Section 66 of the Act of 1909 became, as we have seen, Article 4501. This Section relates to the general visitorial powers of the Commissioner of Insurance; gives him free access to the books and papers of all insurance companies; authorizes him to summon and examine witnesses; to visit the offices of the companies wherever situated; to revoke or modify certificates of authority issued by him to insurance companies; gives him the power to institute suits and prosecutions; etc.

All of the above Sections of the Act of 1909 named by us as being general in their nature and application were carried into the Revised Statutes of 1911, and since the caption of Chapter 108 was not sufficient to make them applicable to other than life, health, and accident insurance companies, they must fall as to all other insurance companies, unless Article 4955, Revised Statutes of 1911, is constitutional. To thus strike them down is to substantially impair, if not destroy, the integrity of the insurance laws of the State as to all except life, health, and accident companies. The gravity of the question, from the public standpoint, is therefore apparent.

But we do not agree that Article 4955 is now unconstitutional. On the contrary, we think it has been valid since the Revised Statutes became effective, September 1, 1911. Prior to that time it was not the law, but after incorporation in the Revised Statutes, and their adoption by the Legislature, it became a valid law of the State.

The constitutional provision under which the Revised Statutes were adopted by the Legislature is Section 43, of Article 3, which reads:

"The first session of the Legislature under this Constitution shall provide for revising, digesting and publishing the laws, civil and criminal; and a like revision, digest and publication may be made every ten years thereafter; provided, that in the adoption of and giving effect to any such digest or revision the Legislature shall not be limited by Sections 35 and 36 of this article."

This Section makes it the duty of the Legislature to adopt and give effect to the revision of the statutes, but exempts it in the matter of procedure from Sections 35 and 36 of Article 3 of the Constitution.

Article 36 provides that no law shall be revived or amended by reference to its title, but in such case the Act revived, or Section or Sections amended, shall be re-enacted and published at length.

Section 35 of Article 3 provides that no Bill shall contain more than one subject, which shall be expressed in its title, and makes void so much of the Act as is not expressed in the title.

By the language used in these three Sections of the Constitution it is manifest that in the adoption and giving effect to the Revised Statutes, the adoption is to be regarded as an act of legislation subject to all constitutional provisions in its passage through the Legislature, except the terms of Sections 35 and 36 of Article 3.

There are no limitations on the power of the Legislature in the adoption and giving effect to the Revised Statutes, except such as might apply to any other species of legislation.

Among the provisions in the Constitution regulating legislative procedure, which the Legislature is compelled to follow in the adoption of the Revised Statutes, are Section 29, of Article 3, prescribing the enacting clause; Section 32, which requires Bills to be read on three several days, except in cases of emergency, etc.; Section 30, which declares that no law shall be passed except by Bill, and that no Bill shall be so amended in its passage through either House as to change its original purpose; and Section 31, which declares that Bills may originate in either House, and when passed by such House may be amended, altered, or rejected by the other.

These and all other Sections of Article 3 must be held to be applicable in the enactment of the Revised Statutes, since the Legislature is relieved only from Sections 35 and 36. Having expressly exempted the Legislature from the matters of procedure specified in these Sections, the Constitution necessarily excluded all other exceptions and made all other provisions regulating legislative procedure applicable in the adoption of the Code. The maxim "*expressio unius est exclusio alterius*" is here applicable. 6 Ruling Case Law, p. 49, § 43; Day Land & Cattle Co. v. State, 68 Texas, 526, 4 S. W., 865; 4 Michie's Digest, 394, 395; Brown v. Maryland, 12 Wheaton, 438, 6 L. Ed., 678; Gibbons v. Ogden, 9 Wheaton 191, 6 L. Ed., 23; Rhode Island v. Massachusetts, 12 Peters, 722, 9 L. Ed., 1233.

Article 3 being applicable in the enactment of the Code, it is quite apparent that in the adoption the Legislature must pass it as a law, and in its passage, under the express language of the Constitution, that Code may be amended.

Section 43 having given the Legislature authority to revise the laws, without, within itself or by any other Section of the Constitution, having prescribed the method of revision, or without having limited the legislative power, except in so far as this power is limited in the enactment of any other law, the Legislature has plenary authority to revise, and may do so in its own way and to any extent; provided, always, the substance of the proposed revision is not otherwise prohibited by the Constitution. It may do so by omitting laws from the Code, which when done, under the repealing clause, are repealed. It may do so by changing words or phrases for the purpose of harmony or brevity, without in fact changing the meaning; or it may do so by the incorporation of new and material matter in the revision. The term "revise" is broad enough to permit the amendment of existing laws or statutes in these several ways. New Century Dictionary; Webster's New International Dictionary; American National Ins. Co. v. Collins, 149 S. W., 554, 556; State v. Towery, 143 Ala., 48, 39 So., 309; Jeffries v. Board of Trustees, 135 Ky., 488, 122 S. W., 813, 816; Falconer v. Robinson, 46 Ala., 340, 348; Cortesy v. Territory, 7 N. M., 89, 32 Pac., 504, 505; Sutherland's Statutory Construction (2d Ed.), Sec. 269; Pratt Institute v. New York, 183 N. Y., 151, 5 Ann. Cases, 198, 199.

Having determined from an examination of the language of the Constitution itself that in adopting the Revised Statutes the Legislature must enact the same as any other law, and in doing so may amend existing laws, we will next inquire as to the legislative practice since the adoption of the Constitution.

Legislative construction and contemporaneous exposition of a constitutional provision is of substantial value in constitutional interpretation. Railway Commission v. Houston, etc. Ry. Co., 90 Texas, 340, 349, 38 S. W., 750; Bagby v. Bateman, 50 Texas, 446. 449; State v. McAlester, 88 Texas, 284, 286, 28 L. R. A., 523, 31 S. W., 187; 4 Michie's Digest, 398, 399; 6 Amer. & Eng. Ency. of Law, 931, 932, and cases cited in notes; Cooley's Const. Lim. (6th Ed.), 81 to 86; Story on the Constitution (4th Ed.), §§ 407, 408; Martin v. Hunter's Lessee, 1 Wheaton, 352, 4 L. Ed., 97; Bank v. Halstead, 10 Wheaton, 63, 6 L. Ed., 264; Briscoe v. Bank of Ky., 11 Peters, 318, 9 L. Ed., 709.

The conclusion above stated, that the Revised Statutes must be adopted as a law, and that in its enactment previous laws may be amended, statutes omitted and repealed, and new matter inserted in the Code, is one consistent with the legislative practice since the adoption of the Constitution in 1876.

Since the adoption of the Constitution in 1876 three compilations and revisions of the statutes have been made. The first was in 1879, within less than three years after the Constitution became effective. The preamble or caption of this revision recited that the "omissions and defects" in existing laws "should be supplied and remedied." The second was in 1895, and the third in 1911. Each of these several adoptions of the Revised Statutes was by Bill, having a caption, enacting, repealing, and emergency clauses. They were passed by the Legislature in the way prescribed in the Constitution for the passage of any other law. In each instance the Bill which constituted the statutes was amended during the process of enactment. In some cases the amendments were of minor importance, but in other instances they were elaborate or material amendments, either adding new matter, changing existing laws, or repealing articles of the old statutes outright. Revised Statutes 1879; Senate Journal 1879, pp. 311, 312, 319, 322; House Journal 1895, pp. 745, 755, 899, 910, 964; House Journal 1911, pp. 1284, 1321; Senate Journal 1911, p. 1233.

It is a well known fact that in the Revised Statutes of 1879 new provisions were inserted and old ones enlarged and systematized. State v. Burgess, 101 Texas, 524, 529, 109 S. W., 922; American National Insurance Co. v. Collins, 149 S. W., 554.

Section 4 of the final title to the Civil Code of 1879, and a similar provision in the revisions of 1895 and 1911, declared that all civil statutes of a general nature in force when the Revised Statutes should take effect, and which were not included therein, or which were not expressly continued in force, were thereby repealed. Provisions of this character are always given effect in revised codes, and where a law is omitted therefrom, or where words and phrases are purposely omitted, the omitted law or phrase is repealed. Wilson v. Vick, 93 Texas, 88, 91, 53 S. W., 576; Anderson v. Engler, 184 S. W., 309; Yarbrough v. Collins, 91 Texas, 306, 308, 42 S. W., 1052; and authorities *supra*.

These authorities are directly in point, and leave no room for discussion as to the legislative effect of the repealing clause in the Revised Statutes of this State. This construction was placed upon the Revised Statutes of 1879 by the session of the Legislature which adopted that Code. Senate Journal 1879, p. 816.

The entire history of the revision or codification of our laws under the present Constitution, extending over a period of forty-three years, shows that in the enactment of the Revised Statutes the Legislature, both contemporaneously and subsequently, has exercised the power to incorporate into the compilation of the laws new matter, to change and modify existing statutes so as to give them another or a more extensive meaning, to repeal statutes outright or in part, as well as to correct verbal inaccuracies or improve the style.

The construction here given Section 43, Article 3, under which the Revised Statutes were adopted, is one consistent with the general rule, which is that such codes are not mere compilations of laws previously existing, but bodies of laws so enacted that laws previously existing and omitted therefrom cease to exist, *and such additions as appear therein are the law from the approval of the Act adopting the Code.* 36 Cyc., pp. 1067, 1080, 1166; 26 Amer. & Eng. Ency. of Law, p. 617; State v. Burgess, 101 Texas, 524, 529, 109 S. W., 922; American National Ins. Co. v. Collins, 149 S. W., 554, 556; McNeely v. State, 50. Texas Cr. App., 279, 96 S. W., 1083; Stevens v. State, 10 Texas Cr. App. 565, 159 S. W., 505, 506; Teem v. State, 79 Texas Cr. App. 285, 183 S. W., 1144, 1152; United States v. Bowen, 100 U. S., 508, 513, 25 L. Ed., 631; Hamilton v. Rathbone, 175 U. S., 414, 419, 420, 44 L. Ed., 219; Cambria Iron Co. v. Ashburn, 118 U. S., 54, 57, 30 L. Ed., 60; State v. Towery, 143 Ala., 48, 39 So., 309; Pratt Institute v. New York, 183 N. Y., 151, 5 Ann. Cases, 198, 199, 75 N. E., 1119; Ex Parte Lawler, 185 Ala., 428, 64 So., 102, 103; Eddington v. Union Portland Cement Co., 42 Utah 274, 130 Pac., 243, 244; Ex Parte Donnellan, 49 Wash., 460, 95 Pac., 1085, 1087; Herndon v. State, 16 Okla. Cr., 586, 185 Pac., 701, 705; Pomainville v. Grand Rapids, 157 Wis., 384, 147 N. W., 377, 378; Commonwealth v. N. Y. Central, etc. Ry. Co., 206 Mass., 417, 19 Ann Cases, 529, 92 N. E., 767, 768; Sharp v. C. N. O. & T. P. Ry. Co., 133 Tenn. 1, 179 S. W., 375, 379, Ann Cases, 1917C, 1212.

It is unnecessary to again refer to authorities, including Texas cases, previously cited, which support the rule. Other decisions, equally applicable, and directly in point on both the law and facts of this case, will be referred to later.

The history of the subject of codification of statutes supports in a most striking and conclusive manner the general rule above announced.

It is authoritatively stated that the Gregorian, Hermogenian, and Theodosian Codes superseded all laws not included in them, the two former by actual practice of the courts, and the latter by virtue of the law.

The Code of Justinian, promulgated by him finally in A. D. 534, has perhaps had a greater effect on the destinies of mankind than any other merely human work. The Code was complied at the command of the Emperor by Tribonian and his associates, who were directed to revise the statutes and laws, in very much the same manner that the codification committees revise our statutes; and when the revision was completed, and adopted or proclaimed, it alone became the law, and all laws not included were repealed. Gibbons Rome, Chap. XLIV; Cooper's Justinian, p. xii; 15 Ency. Brittanica, (11th Ed.), pp. 597, 598; 11 Corpus Juris, 941, 942.

Not only is the rule announced as to the effect of the enactment of the Revised Statutes supported by authority and history, but by reason and necessity. The law to be just and effective must be accessible and certain.

To say that the citizen, in order to know the law by which his rights are to be determined, must go through the many volumes of session laws enacted by nearly forty different legislatures, and examine the original Acts, including the captions and repealing acts and clauses, is not to be seriously considered. The Roman citizen who had to read only 3000 plates of brass, on which his laws were recorded, had, as compared to this, an easy undertaking. The session laws are for all practical purposes inaccessible to the average citizen, and the task of searching through them to ascertain the law an insurmountable one. These laws, as republished by Gammel, down to 1919 occupy nineteen huge volumes, aggregating approximately thirty thousand pages. And yet, unless the Revised Statutes constitute the law—*are the law*—citizens and courts alike will be compelled to seek it in the Session Acts of the Legislature.

But the Revised Statutes, as we have seen, are the law, and are to be looked to with safety and confidence by the citizen; nor need one, under the rules of construction shown in the authorities cited, look into the original Acts, except to explain ambiguities in the Code. The Revised Statutes of this State, when once adopted, become the entire law on the subjects they purport to cover, unless specially excepted, and any inquiry into matters of legislative procedure by which the original session Acts were adopted, for the purpose of impeaching the constitutional integrity of that procedure, is wholly inadmissible.

It is quite true that the Revised Statutes contain a clause as to the manner of their construction. Section 16 of the Final Title declares: "That the provisions of the Revised Statutes, so far as they are substantially the same as the statutes of this State in force at the time when the Revised Statutes shall go into effect, or of the common law in force at said time, shall be considered as continuations thereof, and not as new enactments of the same." This same provision was Section 19 of the Final Titles of the Revised Statutes of 1879 and of 1895. But it in no sense militates against the rule that where the Legislature has incorporated new matter in the Code, or has changed the meaning or application of previous laws, the additions and changes shall be given effect. In fact, the language used by limiting the statutory rule of construction to those cases where the language of the Code is "substantially the same" as the previously existing law, necessarily means that where the language is not substantially the same, but different, the rule is not to apply, and the meaning is to be found in the language actually used under the ordinary rule

of construction. This is the generally accepted rule declared by the authorities. 36 Cyc. p. 1067; 26 Amer. & Eng. Ency. of Law, pp. 624, 625, 651, 652; 25 Ruling Case Law, pp. 1050, 1051, 1066. This rule is adhered to in this State. State of Texas v. W. N. Burgess, 101 Texas, 524, 529, 109 S'. W., 922; St. Louis S. W. Ry. Co. v. Hill & Morris, 97 Texas, 506, 508, 80 S. W., 368.

In the case of State v. Burgess this Court expressly held that this provision of the final title of the Revised Statutes did not make them a mere compilation of existing laws, but that where changes were shown in the Code, these changes must be given effect, and the Code control. To the same effect is our opinion in the case of Railway Co. v. Hill & Morris.

There are no decisions of this Court which militate against the conclusion stated above.

The cases of Hartford Fire Ins. Co. v. Walker, 94 Texas, 473, 61 S. W., 711, Fischer v. Simon, 95 Texas, 234, 66 S. W., 447, 882, and of Judd v. State, 25 Texas Civ. App., 418, 62 S. W., 543, a Court of Civil Appeals case in which writ of error was denied, were all cases merely of construction; and since the language found in the Code was the same as in the original Acts, it was properly held to mean the same in the Code as in the session laws.

Our attention is directed to certain cases from the Courts of Civil Appeals in which writs of error have been denied by this Court, from which we are urged to conclude that the failure of the caption to embrace the substance of Section 55, Chapter 108, Acts of the Thirty-second Legislature, renders invalid Revised Statutes Article 4955, which contains the same language as the Section. The cases referred to are Judd v. State, 25 Texas Civ. App., 418, 62 S. W., 543; National Surety Co. v. Murphy-Walker Co., 174 S'. W., 997, and Ocean Accident & Guarantee Corporation, Ltd. v. Northern Texas Traction Co., 224 S. W., 212.

We have heretofore referred to the Judd Case. In that case the Court of Civil Appeals had properly decided the controlling question in the case under the rules of statutory construction. Since the case was correctly decided for that reason, this Court properly refused a writ of error. Davis v. Lanier, 94 Texas, 455, 61 S. W., 385; Aspley v. Hawkins, 99 Texas, 380, 89 S. W., 972.

In the case of Ocean Accident & Guarantee Corporation, Ltd. v. Northern Texas Traction Co., the constitutional question here presented was not raised, and the application for writ of error was dismissed for want of jurisdiction.

The application for writ of error in the National Surety Co. Case, above named, we conclude from an examination of the original papers, was dismissed because the amount in controversy was below the jurisdiction of the court.

The fact that Article 4955 of the Revised Statutes adopted by the Legislature, copied from Section 55, Chapter 108, Acts 1909, does not find support in the caption in the original legislative Act, does not invalidate the Article found in the Code. This is well settled by a long line of authorities of other States and jurisdictions. 36 Cyc. pp. 971, 1067, 1068; 25 Ruling Case Law, p. 867; Central of Georgia Railway v. State, 104 Ga., 831, 42 L. R. A., 518, 526, 527, 31 S. E. 531; Emory v. G. U. O. of Oddfellows 140 Ga., 423, 78 S. E., 922, 925; Kennedy v. Meara, 127 Ga., 68, 75, 9 Ann. Cases, 396, 56 S. E., 243; McFarland v. Donaldson, 115 Ga., 567, 41 S. E., 1000, 1001; Carlton v. State,, 63 Fla., 1, 58 So., 486, 488; Christopher v. Mungen, 61 Fla., 513, 55 So., 273, 280; Park v. Laurens Cotton Mills, 75 S. C., 560, 56 S. E., 234, 237; Cole v. Sloss. etc. Co., 186 Ala., 192, Ann. Cas. 1916E, 99, 65 So., 177; Curee v. Spokane, etc. R. Co., 32 Idaho, 643, 186 Pac., 1101; Anderson v. Great Northern Ry. Co., 25 Idaho, 433, Ann. Cas. 1916C, 191, 192, 138 Pac., 127; State v. Devers, 32 S. D., 473, 143 N. W., 364, 366; State v. Horner, 35 S. D., 612, 153 N. W., 766, 768.

These authorities are all precisely in point, but we shall quote from but one of them, Central of Ga. Ry. v. State, the leading case on the subject.

The doctrine announced in this case was approved by the Court of Criminal Appeals of this State in 1913, in the case of Stevens v. State, 70 Texas, Cr., 565, 159 S. W., 505, 506. The opinion in the Georgia Case is full and complete, but we deem it unnecessary to state the case or quote extensively therefrom. The decision is conveniently accessible to both bench and bar in the L. R. A. Reports. On the exact question here involved the court said:

"It is further contended by plaintiff in error that the embodiment in the Code of an unconstitutional law is an error which the legislature did not intend to saction by its act adopting the Code. If the infirmity of the act relates to matter upon which the Constitution prohibits any legislation at all, of course the act would be void, it matters not where found, nor how often. adopted. Where, however, the defect is not inherent in the subject-matter itself, but relates simply to its manner of passage under a defective title, it is, of course, permissible for the legislature to re-enact the measure under a proper title. If the act of 1889 in question, empowering railroad commissioners to require railroad companies to erect depots, was unconstitutional as originally passed, because its title did not indicate what was in its body, it simply amounted to no law, and was just as if there had never been any attempt to legislate upon the subject. Such matter afterwards embraced in the Code duly adopted is like any other new matter contained therein, and has force and effect from the time of the adoption of the Code."

Having concluded that R. S. Article 4955 is constitutional, and that it is sufficient to make R. S. Articles 4749 and 4764 applicable to the plaintiff in error, and that plaintiff in error can only be taxed at its home office, at Galveston, in Galveston County, it follows that the judgment of the Court of Civil Appeals and of the District Court must be reversed, and judgment here rendered in favor of the plaintiff in error, the American Indemnity Company, and it is so ordered.

*Reversed and rendered.*