ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

February 23, 2006

The Honorable Steven B. Payson
Dawson County Attorney
Post Office Box 1268
Lamesa, Texas 79331

Opinion No. GA-0405

Re: Whether article VII, section 6b of the Texas Constitution permits a commissioners court to distribute county permanent school fund reductions to a school district based on students attending school in the district who have transferred from another school district in the county (RQ-0386-GA)

Dear Mr. Payson:

You ask whether article VII, section 6b of the Texas Constitution permits a commissioners court to distribute county permanent school fund reductions to a school district based on students attending school in the district who have transferred from another school district in the county.[1]

## I. Legal and Factual Background

Under section 6 of article VII of the Texas Constitution, a commissioners court is the trustee of the school land granted to the county:

> All lands heretofore, or hereafter granted to the several counties of this State for educational purposes, are of right the property of said counties respectively, to which they were granted, and title thereto is vested in said counties, and no adverse possession or limitation shall ever be available against the title of any county. Each county may sell or dispose of its lands in whole or in part, in manner to be provided by the Commissioners Court of the county. *Said lands, and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein;* said proceeds to be invested in bonds of the United States, the State of Texas, or counties in said State, or in such other securities, and under

---

[1]*See* Letter and Brief from Honorable Steven B. Payson, Dawson County Attorney, to Office of the Attorney General, Opinion Committee, at 1 (Aug. 22, 2005) (on file with the Opinion Committee, *also available at* http://www .oag.state.tx.us) [hereinafter Request Letter and Brief respectively].

> such restrictions as may be prescribed by law; and the counties shall be responsible for all investments; the interest thereon, and other revenue, except the principal shall be available fund.

TEX. CONST. art. VII, § 6 (emphasis added); *see also* TEX. LOC. GOV'T CODE ANN. § 263.003(a) (Vernon 1999) ("The commissioners court of a county shall provide for the protection, preservation, and disposition of lands granted to the county for educational purposes."), (b) ("The commissioners court may dispose of land granted to the county for educational purposes only as provided by law.").

In 1995, the legislature extensively revised Titles 1 and 2 of the Education Code.[2] In doing so, the legislature repealed provisions governing county school lands, sections 17.81 through 17.84 of the Education Code, but provided that a county operating under repealed chapter 17 "may continue to operate under the applicable chapter as that chapter existed on [May 1, 1995.]"[3] Chapter 17 is currently included in the Education Code as an appendix to Title 2. *See* TEX. EDUC. CODE ANN. tit. 2, §§ 17.01-.99-App. (Vernon 1996). Under the constitution and these statutes, county school lands together with investments purchased with the proceeds of land sales constitute the "county permanent school fund."[4] Interest and revenue on county permanent school fund investments, which article VII, section 6 refers to as "available fund," *see* TEX. CONST. art. VII, § 6, are commonly referred to as the "county available school fund."[5]

---

[2]*See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, sec. 11.301, 1995 Tex. Gen. Laws 2207, 2234.

[3]*See id.* §§ 1 (enacting Education Code section 11.301(a) regarding continued application of certain repealed chapters), 58(a)(1) (repealed chapters), 1995 Tex. Gen. Laws 2207, 2234, 2498.

[4]*See* TEX. CONST. art. VII, § 6b (authorizing the commissioners court to reduce the "county permanent school fund"); TEX. EDUC. CODE ANN. tit. 2, § 17.81-App. (Vernon 1996) ("It shall be the duty of the commissioners court to provide for the protection, preservation, and disposition of all lands heretofore granted, or which may hereafter be granted, to the county for educational purposes and *which constitute the permanent county school fund.*") (emphasis added). *See also infra* note 5.

[5]As this office has explained, in addition to county school lands,

> [t]he permanent school fund belonging to a county would be the funds or the bonds authorized to be purchased by the county with such funds, which resulted from the sale or lease of the land granted to the various counties for public school purposes. The available school fund belonging to the county would be the income derived from the investment of the county permanent school fund.

Tex. Att'y Gen. Op. No. M-480 (1969) at 2; *see also* TEX. EDUC. CODE ANN. tit. 2, §§ 17.82(b)-App. (Vernon 1996) ("The proceeds of any such sale [of county school land] shall be invested in bonds of the United States; the State of Texas; counties of the state; independent or common school districts; road precinct, drainage, irrigation, navigation, and levee districts in the state; or incorporated cities or towns; or in interest-bearing bank time deposits with the bank having been designated the depository for that county under the terms and conditions of the depository contract. These bonds and deposits shall be held by the county in trust for the benefit of its public free schools, and only interest thereon may be used and expended annually."), 17.83 ("Besides other available school funds provided by law, rental and lease proceeds from lands previously granted by the state to any county for educational purposes shall be appropriated by the

(continued...)

Article VII, section 6b, approved by the voters in 1972,[6] effectively amends section 6 to authorize a commissioners court to distribute all or some of the county permanent school fund corpus to the school districts of the county for paying bonded indebtedness or making permanent improvements:

> Notwithstanding the provisions of Section 6, Article VII, Constitution of the State of Texas, any county, acting through the commissioners court, *may reduce the county permanent school fund of that county and may distribute the amount of the reduction to the independent and common school districts of the county on a per scholastic basis* to be used solely for the purpose of reducing bonded indebtedness of those districts or for making permanent improvements. The commissioners court shall, however, retain a sufficient amount of the corpus of the county permanent school fund to pay ad valorem taxes on school lands or royalty interests owned at the time of the distribution. Nothing in this Section affects financial aid to any school district by the state.

*Id.* § 6b (emphasis added). There are no judicial opinions construing section 6b, but this office has concluded that all the school districts with territory in a county are entitled to partake in a section 6b distribution, including school districts that also include territory in other counties. *See* Tex. Att'y Gen. Op. No. H-47 (1973) at 3. When more than one school district has territory in the county, section 6b requires the commissioners court to distribute a county permanent school fund reduction between the school districts by allocating each district "a pro rata part for each 'scholastic' residing in the part of the district within [the] county." *Id.*

Your letter asks about the proper method to distribute a reduction of the county permanent school fund under article VII, section 6b. You explain that there are five independent school districts (ISDs) located in Dawson County. *See* Brief, *supra* note 1, at 1. Only Lamesa ISD is located wholly within the county. *See id.* Two other school districts, Klondike and Sands ISDs, are located in both Dawson and Martin Counties. *See id.* Dawson ISD is located in Dawson, Terry and Gaines Counties. *See id.* The campuses of the Dawson, Klondike, and Sands ISDs are located in Dawson County. *See id.* O'Donnell ISD is located in Dawson and Lynn Counties "with the school campuses in Lynn County." *Id.* You and the county auditor have correctly concluded that all these school districts, because they have territory in the county, are entitled to partake in the distribution and that the location of their campuses is not a relevant factor. *See id.* at 1, 3; *see also* Tex. Att'y Gen. Op. No. H-47 (1973) at 3, Tex. Att'y Gen. LO-98-006, at 2 ("Attorney General Opinion H-47 stands for

---

[5](...continued)
commissioners court of the county in the same manner legally prescribed for the appropriation of interest on bonds purchased with the proceeds from sale of such lands.").

[6]*See* Act of May 26, 1971, Tex. H.R.J. Res. 57, 62d Leg., R.S., 1971 Tex. Gen. Laws 4138 (adopted Nov. 7, 1972).

the proposition that under article VII, section 6b, a school district with at least some territory in a county is entitled to a portion of the corpus of the county permanent school fund."). However, there is some question regarding how the funds should be distributed among the five school districts.

You provide the following facts:

> There are students who reside in Lamesa Independent School District who attend school in the other 4 school districts. There are also students who are being home schooled. There are also students who are over the age of 18 who are still in school in each district who would be counted in the Average Daily Attendance under the state education code. There are also illegal aliens attending our schools. The Superintendent of the Lamesa Independent School District is of the opinion that the Dawson Commissioner's Court must count and distribute the permanent school fund on the basis of the School District of the child's residence rather than the school of his attendance. The superintendents of the other school districts are of the opinion that if they are educating the child, they should get to count the child as one of their scholastics in determining the proration.

Brief, *supra* note 1, at 1.

## II.    Analysis

Your question is whether students who reside in Lamesa ISD but who attend school in one of the other four school districts should be treated as scholastics of Lamesa ISD or of the districts where they attend school. *See id.*

Article VII, section 6b of the Texas Constitution requires a commissioners court to "distribute the amount of the reduction to the independent and common school districts of the county on a per scholastic basis." TEX. CONST. art. VII, § 6b. In 1973, shortly after section 6b's adoption, this office addressed the meaning of the phrase "on a per scholastic basis" in Attorney General Opinion H-47 and determined that it "means 'on the basis of the number of persons residing in the school district eligible by age for free education.'" Tex. Att'y Gen. Op. No. H-47 (1973) at 2. The opinion considered and expressly rejected the suggestion that distribution between school districts could be based on the number of students who attend school in the district. *See id.* (concluding that the phrase "on a per scholastic basis" "has no relation to average daily attendance"). Opinion H-47 based its analysis primarily upon a 1931 Texas Supreme Court case. That case, *Love v. City of Dallas*, while focusing primarily upon the distribution of the *available* school fund and its relation to transfer students, made clear the Court's view that the property and funds of the public schools are impressed with a trust in favor of the county or district in which the student resides:

> In view of the history of the subject and the statutory and constitutional provisions referred to above, it is plain, we think, that

the property and funds of the public schools are held in trust by the city, district, county, or other statutory agency, to be used for the benefit of the school children of the community or district in which the properties exist, or to which the school funds have been allocated. We think these properties and funds are so plainly and clearly impressed with a trust in favor of the local public schools of the city or district that they are within the protective claims of both the state and federal Constitutions, and that the Legislature is without power to devote them to any other purpose or to the use of any other beneficiary or beneficiaries.

*Love v. City of Dallas*, 40 S.W.2d 20, 26 (Tex. 1931).

As a result, distribution of the county permanent school fund follows the property rather than the student. From a practical point of view, this construction makes sense, because a student who transfers to another district retains a right to return at any time to the district in which he resides. Since 1973, no court or attorney general opinion has questioned Opinion H-47. Moreover, that opinion was issued only seven months after the November, 1972 adoption of article VII, section 6b, and thus is entitled to the benefit of the contemporaneous construction rule. *See Am. Indem. Co. v. City of Austin*, 246 S.W. 1019, 1023 (Tex. 1922) ("contemporaneous exposition of a constitutional provision is of substantial value in constitutional interpretation"); Tex. Att'y Gen. Op. No. GA-0054 (2003), at 3 ("The construction placed upon statutes and constitutional amendments soon after their enactment or adoption is entitled to substantial weight."). Thus, it is our opinion that a section 6b distribution must be based on students residing in a district as opposed to attending school in the district.

Accordingly, in answer to your question, for purposes of article VII, section 6b, transfer students are to be counted as scholastics of the school district in which they reside. A commissioners court may not distribute county permanent school fund reductions to a school district based on students attending school in the district who have transferred from another school district.[7]

We note that you cite Attorney General Opinion JM-355 for the proposition that a commissioners court has the discretion "to set the criteria for deciding who to count" as scholastics, *see* Brief, *supra* note 1, at 3, and conclude that the Dawson County Commissioners Court may therefore distribute funds among the school districts on the basis of average daily attendance, *see id.* at 4. In Attorney General Opinion JM-355, this office noted that the legislature had repealed statutes that provided for a scholastic census "whereby the number of students of scholastic age residing in a particular school district could be determined." Tex. Att'y Gen. Op. No. JM-355 (1985) at 4. Given the absence of an official state census, this office determined that a commissioners court has the discretion "to formulate a method to determine the scholastic population within a school district." *Id.* at 5. However, in exercising that discretion, the commissioners court cannot use criteria that are

---

[7]Thus, for example, the 40 students who reside in Lamesa ISD but transfer to O'Donnell ISD must be counted as scholastics of Lamesa ISD. *See* Brief, *supra* note 1, at 4.

not authorized by section 6b. The commissioners court may select a method to determine the number of "persons residing in the school district eligible by age for free education,"[8] but it may not select a method that counts as a scholastic a person who resides in another school district. *See* Tex. Att'y Gen. Op. Nos. H-391 (1974) at 2 (proportional distribution "according to actual pupil enrollment would not be the correct standard"); H-47 (1973) at 2.

You also ask whether article VII, section 6b requires a commissioners court to count certain other persons as scholastics. *See* Brief, *supra* note 1, at 1, 3. In particular, you ask about "students who are being home schooled," "students who are over the age of 18 who are still in school," and "illegal aliens attending our schools." *Id.* at 1. Section 25.001 of the Education Code governs which persons residing in a school district are eligible to attend its schools. A school district must admit for a school year a person residing in the district who is at least five years of age and under 21 years of age as of September 1st of the school year. *See* TEX. EDUC. CODE ANN. § 25.001(a)-(b) (Vernon Supp. 2005). Thus, children residing in a school district who are home schooled or students residing in a district who are over the age of 18 but not yet 21 must be counted as scholastics. In addition, we gather that there is some dispute between ISDs regarding whether undocumented persons must be counted as scholastics. *See* Brief, *supra* note 1, at 1, 3-4.[9] Undocumented persons residing in a school district may not be denied admission on the basis of their immigration status. *See Plyler v. Doe*, 457 U.S. 202 (1982); 8 U.S.C. § 1643(a)(2) ("Nothing in this chapter [restricting entitlement to welfare and public benefits based on immigration status] may be construed as addressing alien eligibility for a basic public education as determined by the Supreme Court of the United States under *Plyler v. Doe* (457 U.S. 202) (1982).") (Personal Responsibility and Work Opportunity Reconciliation Act of 1996).[10] Accordingly, school-age undocumented persons residing in a school district must be counted as scholastics.

---

[8]Tex. Att'y Gen. Op. No. H-47 (1973) at 2.

[9]*See also* Brief from Cheryl T. Mehl, Schwartz & Eichelbaum, P.C., to Nancy S. Fuller, Chair, Opinion Committee, Attorney General of Texas, at 3 (Oct. 7, 2005) (on file with Opinion Committee).

[10]*See also* www.tea.state.tx.us/taa/legal080205.html (Letter from David A. Anderson, General Counsel, Texas Education Agency, to School District Administrator (Aug. 2, 2005) (advising that "under the United States Supreme Court decision in *Plyler v. Doe* . . . a student's immigration status is not a permissible basis for denying admission to a public school")).

## S U M M A R Y

Article VII, section 6b of the Texas Constitution authorizes a commissioners court to reduce the county permanent school fund and to "distribute the amount of the reduction to the independent and common school districts of the county on a per scholastic basis." TEX. CONST. art. VII, § 6b. For purposes of article VII, section 6b, transfer students are to be counted as scholastics of the school district in which they reside. A commissioners court may select a method to determine the number of resident scholastics in each school district in the county, but it may not select a method that counts as a scholastic a person who resides in another school district.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee