## STATE OF TEXAS v. W. N. BURGESS ET AL.

No. 1833.   Decided April 29, 1908.

**1.—Insurance of Live Stock—Mutual Relief Associations.**

A company incorporated in April, 1906, under subdivision 46 of article 642, Revised Statutes, for the insurance of live stock, though a mutual company and without capital stock, was not a "mutual relief association" within the meaning of article 3096, Revised Statutes, but an insurance company, and was not one of those excepted by such article 3096 from the provisions of Title 58 of the Revised Statutes. Farmer v. State, 69 Texas, 569.   (Pp. 527, 528.)

**2.—Revision of Statutes—Previous Laws.**

The construction which should be given to previous statutes as enacted by the Legislature is persuasive, but not conclusive as to the effect to be given to the language adopted in a statutory revision thereof. The code, when adopted by the Legislature, has itself the effect of law, and must control where it differs from the statutes out of which it is framed.   (Pp. 528, 529.)

**3.—Same.**

Title 58 of the Revised Statutes, article 3028 of which required the charter of an insurance company to be submitted to the Attorney-General and certified by him to be in accordance with law, and to be deposited with the Commissioner of Insurance, was apparently formed by the combination, not only of the insurance laws of 1874 and 1875, which related only to life, health, fire and marine companies, but also of the Act of Aug. 21, 1876 creating the Department of Insurance, etc., which required the charters of all insurance companies, with the certificate of the Attorney-General, to be filed with the Commissioner of Insurance, and article 3028 therefore applies to all such companies.   (Pp. 528–531.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

The State of Texas appealed from a judgment for defendants on

demurrer, in a suit brought by it to prohibit them from doing business as a corporation, and on an affirmance obtained a writ of error.

*Robert V. Davidson,* Attorney-General, and *W. E. Hawkins,* Assistant for plaintiff in error.—No live stock insurance company can be legally incorporated in the State of Texas, except upon compliance with the requirements of Title 58 of the Revised Statutes of Texas relative to the incorporation of insurance companies.

Article 642, chap. 2, title 21, of the Revised Statutes of Texas does not authorize the incorporation of any insurance company which can legally obtain a charter or do any insurance business without a compliance with the requirements of title 58 of the Revised Statutes of Texas. Rev. Stats., art. 3028, 3047, 3048, 3049, 3050, 3051, 3058, 3060, 3061, 3093; General Laws, 1893, page 112, subdivision 46; Kimbrough v. Barnett, 93 Texas, 301; Hendricks v. State, 20 Texas Civ. App., 178; People v. Rose, 174 Ill., 310 (44 L. R. A., 124).

We contend that subdivision 46 of Revised Statutes, article 642, whereby the general incorporation act provides for the incorporation of live stock insurance companies, should be construed in connection with the provisions of Revised Statutes, Title 58, and that the provisions of said title 58, and the authority and supervision of the Commissioner of Insurance, should be held to extend and apply to a live stock insurance company.

Section 46 of Article 642 of the Revised Statutes of Texas does not authorize the incorporation of a live stock insurance company which is free from the operation and effect of the provisions of Revised Statutes, title 58, relative to the incorporation of insurance companies.

*J. M. Patterson,* for defendants in error.—The general insurance laws of Texas, title 58 of the Revised Statutes of 1895, do not apply to and govern mutual live stock insurance companies, without capital stock, organized and chartered under the general incorporation laws of Texas, because such corporations are expressly exempt from said general insurance laws by Article 3096, Revised Statutes of 1895; and the trial court did not err in sustaining appellees' general and special exceptions to appellant's petition. Rev. Stats., 1895, art. 3096; Acts of 1885, p. 62 (Gammel's Laws, vol. 9, p. 682); Rev. Stats., 1895, art. 3096w.

The court did not err in sustaining appellees' demurrers, general and special, to appellant's petition, because title 58 of the Revised Statutes of 1895 does not in any way affect or apply to live stock insurance companies, but only to life, health, fire, marine, casualty and accident insurance companies. Act of May 2, 1874, p. 197; Act of February 17, 1875, p. 31; Act of August 21, 1876, p. 219; Revised Statutes of 1879, title 53; Act of April 9, 1879, p. 83; Act of April 24, 1879, p. 159; Act of July 9, 1879, Spec. Sess., p. 32; Act of March 28, 1885, p. 62; Act of April 8, 1889, p. 11; Act of April 3, 1889, p. 98; Act of May 11, 1893, p. 156; Act of 1895, p. 97; Act of April 20, 1895, p. 80; Act of 1897, p. 197; Act of June 18, 1897, Spec. Sess., p. 15; Act of 1895, p. 190;

Revised Statutes of 1895, title 58·; Section 19, Final Title, Rev. Stats., 1879; Section 19, Final Title, Rev. Stats., 1895; Report of Codifiers of 1879 on Title 53; Hartford Fire Ins. Co. v. Walker, 94 Texas, 473; Fisher v. Simon, 95 Texas, 234; Mills County v. Lampasas County, 90 Texas, 603, 606; Swain v. Mitchell, 27 Texas Civ. App., 62; Fisher v. Simon, 66 S. W. Rep., 882; Braun v. State, 40 Texas Crim. Rep., 238; Higgins v. Rinker, 47 Texas, 393, 398; Hanrick v. Hanrick, 54 Texas, 101, 110; Brown v. Chancellor, 61 Texas, 437, 445; State v. Delesdenier, 7 Texas, 76, 106; Graves v. State, 6 Texas Crim. App., 228, 234; Viterbo v. Frienlander, 120 U. S., 707; United States v. Dauphin, 20 Fed. Rep.; 625; Sutherland on Stat. Const., sec. 219; Westerman v. Supreme Lodge, 94 S. W. Rep., 470; Virginia Acc. Ins. Co. v. Dawson, 53 W. Va., 619, 46 S. E., 51; Sams v. St. Louis & M. R. Co., 73 S. W. Rep., 686; State v. Fry, 85 S. W. Rep., 328, 329; State v. Fontenot, 112 La., 628; 36 So., 630; Covington v. McNickle, 57 Ky. (18 B. Mon.), 262, 268; Montville St. Ry. Co. v. New London N. R. Co., 68 Conn., 418, 36 Atl., 811; Jackson County v. Derrick, 23 So., 193.

From the language used in the articles noted above, we think it must be admitted that this chapter pertains only to companies with a capital stock. If the words "insurance business" in article 3028 be construed as applying to all kinds of insurance, then the language of article 3033 requires every insurance company organized in this State to have a capital stock as it is provided in this article that "the stock of any company organized under the laws of this State shall be divided into shares of one hundred dollars each." This is broader language than that used in article 3028, but we hardly think any one would contend that insurance companies can not be legally organized in this State without a capital stock. The only sensible construction to place on the language in these articles is that chapter 1 of title 58 applies only to companies having a capital stock, unless by construing it · with other provisions of the statutes it appears to have a different meaning.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

The object of this suit is to restrain the defendants from carrying on a live stock insurance business under the charter of a corporation called the Southwestern Live Stock Insurance Company. The general grounds of the action were that the company was not legally incorporated and had not complied with conditions prescribed by the laws of the State to entitle it to conduct an insurance business. The more specific allegation was that the charter, a copy of which was attached to the petition, had only been filed with the Secretary of State, and had never been approved by the Attorney General, in addition to which was a general allegation that the company had never complied or attempted to comply with the laws regulating insurance companies. The petition also prayed for a cancellation of the charter.

In the District Court the demurrers of the defendants were sustained and the cause was dismissed and this action was affirmed by the Court of Civil Appeals. The demurrers were styled general and

special, but the latter consisted only of the assignment of reasons which, if sound, would sustain the general demurrer. The question therefore is not as to the formal sufficiency of the petition, but is whether or not the substance of a good cause of action is shown, and this is the question discussed in the briefs.

The Court of Civil Appeals held that this company was exempted by article 3096 of the Revised Statutes from compliance with the other provisions of the title (58) of which that article is a part. Article 3096 is as follows:

"Nothing in this title shall be construed to affect or in any way apply to mutual relief associations organized and chartered under the general incorporation laws of Texas, or which are organized under the laws of any other State, which have no capital stock, and whose relief funds are created and sustained by assessments made upon the members of said associations in accordance with their several by-laws and regulations; provided, that the principal officer of every such benevolent organization (not conducted by lodges a quorum of whose members meet in their respective lodge rooms at least once each month) shall be required to make an annual statement under oath to the department of agriculture, insurance, statistics and history, on the first day of January of each year, or within sixty days thereafter, showing—" (the essentials of the report are here given).

"And should any such benevolent organization refuse or neglect to make an annual report as above required, it shall be deemed an insurance company conducted for profit to its officers, and amenable to the laws governing such companies."

The Southwestern Live Stock Insurance Company was incorporated in April, 1906, under subdivision 46 of article 642, Revised Statutes, which authorizes the incorporation of companies, "For the organization of fire, marine, life and live stock insurance companies." Its charter states its purpose to be to "conduct a live stock insurance company, or business, upon a mutual or co-operative plan without authorized capital stock, and to issue policies of indemnity upon live stock to the members of this association:" It further states that it "shall collect from its members dues, fees, or premiums. for the operation of said association" and that it "owns no goods, chattels, lands, rights, credits or assets."

Is it a "mutual relief association" such as is mentioned in article 3096? We think it clearly is not. It is merely a live stock insurance company conducted on the mutual or co-operative plan. If there were any doubt as to whether the description, "mutual relief association," by itself, would apply to such a company, there can be none when we read, in connection with that, the further language, "such benevolent organization," twice used in article 3096, to further indicate the character of the companies referred to. No stretch of this language could make it fit such a business as that now in question. And we are not without authority as to the kinds of companies included in this provision of the statute. In Farmer v. The State (69 Texas, 569), Chief Justice Willie said of it: "In our opinion, the statute applies to no other associations except those

organized under title 20, Revised Statutes, for benevolent purposes. If organized for profit, the law did not intend to change their nature, or declare that to be benevolent which was not so in reality." It needs no argument to demonstrate that this company is not, what it does not pretend to be, a benevolent organization. It is equally clear that the mutual relief associations exempted by article 3096 are benevolent organizations. If possible, this is made clearer by the Act adopted in 1895, which now forms chapter 4 of title 58 and regulates the organization, conduct and supervision of "Home Life and Accident Insurance Companies." In section 3096w an exception was made, corresponding with the Act of 1885 (article 3096) in which the character of the organizations excepted was much more carefully defined as "Mutual benefit organizations," also designated as "such benevolent organizations," of which a number, such as the Order of Chosen Friends, the Knights of Honor and other like societies, were named by way of illustration.

Another position of some plausibility is taken by counsel for defendants. It is that this company is not within, and not required to comply with, the affirmative provisions of title 58, for noncompliance with which it is attacked. The particular provision invoked by the specific allegations of the petition is that contained in article 3028 as follows:

"Any number of persons desiring to form a company for the purpose of transacting insurance business shall adopt and sign articles of incorporation, and submit the same to the attorney-general, and if said articles shall be found by him to be in accordance with the law of this State, and of the United States, he shall attach thereto his certificate to that effect, whereupon such articles shall be deposited with the Commissioner of Insurance."

This article is immediately followed by 3029 which specifies the information the articles of incorporation shall contain, among which is: "The amount of its capital stock, which shall in no case be less than one hundred thousand dollars." "Many other provisions of the title are so worded as to indicate that, in them at least, the Legislature was regulating only companies doing life, health, fire and marine insurance business, and, of these, only such companies as operate upon a capital stock. Certainly many of the provisions apply only to such companies.

In maintaining his contention counsel undertakes an elaborate review of the insurance laws existing previous to the adoption of the Revised Statutes of 1879, in which was first inserted, in its present form, the provision which is now article 3028 of the revision of 1895, in order to show that those laws contained, in substance, all that is in that article and in the other provisions of title 58 material to the question, and that they related only to stock companies engaged in life, health, fire and marine insurance, and not to live stock insurance companies, or to mutual companies of any character. And it is contended that this affords further ground for the construction of the provisions of title 58 for which defendants contend, because, it is urged, the revisions of 1879 and 1895 should be taken as only embodying, in changed form, statutes previously existing. This argu-

ment is persuasive and the principle of construction thus invoked should control in the interpretation of the revised statutes where, in the revision, no substantial change has been made from the pre-existing law.   But it is never conclusive, for the reason that those codes were adopted by the Legislature and have the force of law; and, when they differ from the previous statutes, they must control. This is especially true of the codification of 1879, in which, as is well known, new provisions were inserted, and old ones were enlarged and systematized.

But we may apply the defendant's system of reasoning in the decision of the present question, without assuming that in the revisions there has been anything more than formal alterations in the statutes so far as they bear upon this question.   It is true that the great body of the provisions of title 58 regulating insurance companies and their business was formed by a combination of the insurance laws of 1874 and 1875, and that the first related only to life and health insurance companies, and the latter to fire and marine insurance companies.   It is also true that the Act of 1875 contained a provision, in substance the same as that of article 3028, which related alone to fire and marine insurance companies and had no general application to all insurance companies.   It required the filing of the articles of incorporation with the Comptroller, the Department of Insurance, etc., not being then in existence—a difference which is not material.   But it is not true that these were the only laws which entered into the revision of 1879 and afterwards into Title 58 of the present revision.   In the first place the general corporation law of 1874 had authorized the formation of corporations "for any other purpose intended for mutual profit or benefit not otherwise especially provided for, and not inconsistent with the Constitution and laws of this State;" and it can not be doubted that, under this, insurance corporations other than life, health, fire and marine insurance companies could have been formed.   Whether any others had been actually incorporated or not, it was among the possibilities that they might be incorporated, when, in 1876, the Legislature passed the law creating the Department of Insurance, etc. The first section of that act declared that the department "shall be charged with the execution of all laws now in force or which may be hereafter enacted in relation to insurance and insurance companies doing business in this State."   The first and second clauses of section 8 declared it to be the duty of the Commissioner:  "First, to see that all laws of this State respecting insurance companies are faithfully executed.   Second, to file in his office every charter or declaration of organization of a company, with the certificate of the attorney-general, and on application of the corporators, to furnish them with a certified copy thereof."   The provisions are not confined to any particular class of companies or of insurance, but expressly apply to the business of insurance under all laws then existing or thereafter enacted and to every charter of an insurance company. For this reason they can not be limited in their application to insurance companies or businesses then known to exist and regulated

Vol. CI, Supreme—34.

by other laws. The expressions: "All laws now in force or which may be hereafter enacted in relation to insurance and insurance companies," "all laws respecting insurance companies," and "every charter or declaration of organization of a company," admit no such construction.

The sources from which Article 3028 flowed are thus seen to have been the act of 1875, in which the provision in regard to the certification and filing of the articles of incorporation was confined to fire and marine insurance companies, *and* the Act of 1876, in which a like provision applied to all companies. It is easily seen that the revisers, without changing the existing law, expressed in article 3028 the effect of the pre-existing provisions, making the article apply to all insurance corporations, as the Act of 1876 had done. This is further evident from the manner in which they distributed the provisions of that act. The second provision quoted from section 8 was placed in article 3028, in the chapter of title 58 relating to the "incorporation of insurance companies," where it more properly belonged, while the provision quoted from section 1 and other provisions of the Act of 1876, defining the duties of the Commissioner, were, in substance, reproduced in chapter two of the title where those duties are now prescribed.

We are thus led to the conclusion that article 3028, in its origin was, as in its language it is, a general provision applicable to all insurance corporations except such as may be excluded by article 3096. In the same way the provision that the capital stock "shall in no case be less than one hundred thousand dollars," and others relating alone to capital stock, are restricted to stock companies. The forms of expression used are explained by the fact that they are taken from provisions of pre-existing statutes relating to stock companies, and they mean that stock companies shall not have less than one hundred thousand dollars capital stock, and the like, and do not limit the general provisions of article 3028 to stock companies nor to any other class of companies. Unless those provisions concerning capital stock are so restricted as to make them apply only to those companies whose charters require them to have capital stock and thus to reconcile them with provisions which apply to insurance companies generally, it would be difficult to resist the conclusion that they entirely exclude from doing business in this State companies without stock except some especially mentioned, which would be fatal to defendant's case.

It is argued that article 3028 should not have this construction because no other provisions of title 58 apply to such companies as that in question and that it is not reasonable to suppose that the mere approval and filing of articles of incorporation were required of companies other than those whose businesses are regulated by such other provisions. This argument would have force should we agree with the assumption on which it is based. But we are not prepared to concede that none of the other provisions apply to companies other than those which are specially named and treated in some of the articles, viz: stock companies doing life, health, fire and marine insurance business. There are provisions of a very general nature,

some of which are taken from the Act of 1876, which may apply to all. What ones do so apply this appeal does not require us to determine. Of this much we have no doubt that the law creating the department of insurance, etc., laid the basis for the supervision of all corporations doing an insurance business in this State and that the provision carried into article 3028, as we have shown, was inserted for that purpose. Whether other adequate means and methods have been provided, or not, that requirement is clear, and it is enough to sustain this action.

The petition showed that the defendants were doing an insurance business without having complied with article 3028 and to that extent, at least, stated a good cause of action.

*Reversed and remanded.*