## HERBERT W. LOGAN v. TEXAS MUTUAL LIFE INSURANCE ASSOCIATION.

No. 5899.   Decided June 9, 1932.

Motion for rehearing overruled October 13, 1932.
(51 S. W., 2d Series, 288; 53 S. W., 2d Series, 299.)

*W. R. Poage* and *James P. Alexander,* both of Waco, for appellant.

All insurance policies in this State become incontestable not later than two years from their date, and the defendant having failed to file an answer contetsting its liability under the policy sued on within two years from its date, the policy became incontestable. American National Ins. Co. v. Tabor, 111 Texas, 155, 230 S. W., 397; National Live Stock Ins. Co. v. Owens, 63 Ind. App., 70, 113 N. E., 1024; Knights and Ladies of Security v. Russell, 209 S. W., 756; Springfield F. & M. Ins. Co. v. Whisenant, 245 S. W., 963; 8 Couch on Ins., sec. 2114; 3 Cooley on Ins. (2d), p. 1923; 14 R. C. L., 1492.

Even if the defendant association was incorporated for benevolent purposes and originally entitled to the exemptions afforded by Articles 3096 and 3096w, R. C. S., 1895, it lost

such exemptions by engaging in the insurance business and particularly for profit to itself and its officers and by failing to make reports as provided for in said Articles. American Legion of Honor v. Larmour, 81 Texas, 71, 16 S. W., 633; Farmer v. State, 69 Texas, 561, 7 S. W., 223; Concho Camp W. O. W. v. City of San Angelo, 231 S. W., 1106.

Defendant association is subject to the Act of 1909 and especially to Article 4732, R. S., 1925, sec. 3, making its policies incontestable after two years. National Life Ins. Co. v. Parsons, 170 S. W., 1038; American Natl. Ins. Co. v. Welch, 22 S. W. (2d) 1063.

Defendant association is subject to the terms of Article 4736, providing that insurance companies are liable for penalties and attorney's fees for failure to pay its losses promptly. Wirtz v. Woodmen of the World, 114 Texas, 471, 268 S. W., 438; American Ins. Union v. Wylie, 23 S. W. (2d) 491; Independent Order of Puritans v. Brown, 229 S. W., 939.

Article 5049, R. S., 1925, requiring the application to be made part of the policy, is applicable to defendant association. National Life Ins. Assn. v. Hagelstein, 156 S. W., 353; National Surety Co. v. Murphy-Walker Co., 174 S. W., 997.

*Richey & Sheehy,* of Waco, for appellees.

The appellee association was not subject to the insurance laws of Texas, Title 58, R. S., 1925, at the time of its incorporation. State v. Burgess, 101 Texas, 524, 109 S. W., 922.

If the Act of 1909 (Articles 4732 and 4736, R. S., 1925), were applicable to the association it would have the effect of repealing its charter, and depriving it of the right to do business in this State. Galveston, H. & S. A. Ry. Co. v. Wurzbach, 189 S. W., 1006; Bibb v. Hall, 101 Ala., 79, 14 So., 98; International Traveler's Assn. v. Branum, 109 Texas, 543, 212 S. W., 630.

*Hart, Paterson & Hart,* of Austin, and *James V. Allred,* Attorney General, and *Everett L. Looney,* Assistant Attorney General, as amicus curiae.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This case is before us on certified questions from the Court of Civil Appeals at Waco. The certificate is as follows:

"In 1905, seven individual citizens formed an incorporate voluntary association for the purpose of mutually insuring the

respective lives of its members on such terms and conditions as might be established by the constitution and by-laws of said corporation, and obtained from the State of Texas a charter for the association, which was incorporated under the name of The Home Mutual Life Insurance Association of Texas. The name of the corporation was thereafter changed to The Texas Mutual Life Insurance Association of Texas. The articles of incorporation provided that the association was formed for the purpose of insuring the lives of its members in this State, for the sole benefit of its members and not for profit, and provided that the corporation should not have any capital stock. The by-laws of the association provided that same was formed for the purpose of insuring the lives of its members upon the assessment plan, without lodges and at actual cost, and provided that in order to become a member of the association the applicant for membership should file an application, in such form as was approved by the board of directors; that said application should give the general condition of the health and the correct age of the applicant, and any other information required, and that if any false statements were made in the application with reference to sickness or ailments named, that the certificate should not be binding upon the association.

"The association has continuously paid to the Secretary of State the franchise tax required by the State, and offered to make reports to the Commissioner of Insurance but he would not receive same.

"On June 30th, 1928, appellant signed his mother's name, Mrs. Fanny Logan, to an application to appellee for membership in appellee association, stating that Mrs. Logan was at that time in good health and was not suffering with cancer; that she had never had a cancer and had not been refused insurance by any company and was not under the treatment of any physician. Based on said application appellee issued and delivered a certificate to Mrs. Fanny Logan at West, Texas, stating that she was admitted as a member of appellee, subject to the condition that the certificate of membership was based on her application, which was filed with appellee, and subject to the by-laws of appellee. The certificate stated that appellee would pay Herbert W. Logan (appellant) the son of Mrs. Logan, the sum of five dollars to be collected from each member of appellee in the class (C) in which Mrs. Logan was made a member, provided that in no event should there be paid more than $5,000.00 to appellant. Said certificate of insurance and membership further provided that same was granted in

consideration of the application which had been made, and stated that the application was made a part of the contract. It provided that Mrs. Logan should pay $5.50 upon the death of any member in her class within ten days after notice of such death, and that $5.50 thereof should be used to pay the death claim and 50 cents to pay the expenses of appellee. The certificate further provided that no member of the association should be liable for anything more than the $5.50 due on the death of each member. The insurance certificate did not contain the two year incontestable clause; neither did it have attached thereto a copy of the application.

"On July 13, 1928, thirteen days after the insurance and membership certificate was issued, Mrs. Logan died from a malignant cancer with which she had been suffering for a number of months. The certificate of membership and insurance was issued upon the application made by Mrs. Logan and without any medical examination being required. Proof of death was promptly filed by appellant and he made demand for payment of the insurance more than thirty days before the suit was filed. Appellee, on July 28th, 1928, tendered to appellant the $15.00 that had been paid at the time the certificate of insurance and membership was issued, and notified him that it repudiated said contract and would not pay same by reason of the false statement relative to her health contained in the application of Mrs. Logan for membership. Appellant refused to accept the return of the $15.00. The statement of facts, which is short, will accompany this certificate for consideration by the Supreme Court, and same is referred to and made a part hereof for a more complete statement of the case.

"In August, 1929, appellant filed this suit to recover the amount due on the certificate of membership and insurance and also to recover twelve per cent penalty and attorney's fees. Appellee filed a formal answer, consisting of a general demurrer and general denial. In October, 1930, appellant filed an amended petition and appellee for the first time filed an answer contesting the validity of the insurance certificate on the ground that same had been obtained by false and fraudulent representations made and contained in the application.

"Appellant in the trial court and in this court contends that the insurance certificate was incontestable two years after same was issued, and that a copy of the application for membership, not having accompanied or been attached to the certificate of insurance, was not admissible in evidence. The cause was tried

to the court and resulted in judgment being entered denying appellant any recovery.

"There are certain questions of law arising in this litigation that we deem proper to and do hereby respectfully submit to the Honorable Supreme Court of this State for determination upon the facts hereinbefore set out:

### "FIRST QUESTION

"Did the insurance certificate sued upon in this cause become incontestable two years after same was issued except for non-payment of dues or assessments, under the provisions of Article 4732 of the Revised Statutes?

### "SECOND QUESTION.

"Since a copy of the application for membership and insurance did not accompany the certificate of membership and insurance issued by appellee and delivered to Mrs. Logan, was it error for the trial court, over appellant's objection that a copy of same did not accompany said certificate, to admit same in evidence?

### "THIRD QUESTION.

"If the appellant is entitled to recover on said certificate, is he entitled to recover in addition to the principal sum provided for therein, the twelve per cent penalty and reasonable attorney's fees provided for by Article 4736 of the Revised Statutes?

"The Clerk of this Court is directed to forward with this certificate the statement of facts, together with the transcript and copies of the briefs filed, to the Clerk of the Supreme Court for presentation to that court.

"Associate Justice Alexander having, prior to becoming a member of this court, been of counsel in this case, took no part in its consideration."

#### OPINION.

As shown by the certificate we are confronted with the simple question as to whether Articles 4732 and 4736, R. C. S., 1925, have application to this insurance association.

This association was first incorporated on June 20th, 1895, under Section 46 of Article 642, R. C. S. of Texas, 1895. It was organized and chartered as a mutual relief association "For the purpose of insuring the lives of its members in this State, for the sole benefit of its members, and not for profit,

and it shall have no capital stock." The charter was filed with the Secretary of State and not with the Insurance Department as was required at the time for insurance companies organized under Title 58, the then insurance title.

Under R. C. S., 1895, Article 642, supra, was a part of Title 21, the general incorporation title. Article 3096, which was a part of Title 58, supra, expressly exempted concerns of the instant kind from the provisions of Title 58. It therefore follows that this concern was not an insurance company within the contemplation of Title 58, supra, at the time it was incorporated. State v. Burges, 101 Texas, 524, 109 S. W., 922. It is true that Article 3096, R. C. S., 1895, has been repealed, but such repeal has not operated to bring this association under the provisions of Articles 4732 or 4736, supra, as we shall later demonstrate.

It is contended by the appellant that certain laws enacted since this association's incorporation have operated to bring it under Title 78, R. C. S., 1925, the present general insurance title. Articles 4732 and 4736, supra, are parts of such Title 78. It is contended by the association that it is not subject to any of the provisions of Title 78. In undertaking to maintain their respective positions counsel for appellant and the association have each presented elaborate reviews of the several insurance laws in force at the time this association was incorporated, and those enacted thereafter. We do not consider it necessary for us to decide the question as to whether this association is exempt from all of the provisions of Title 78. It is very clear to us, however, that it is not subject to the provisions of either Article 4732 or Article 4736.

Our holding that this association is not subject to the provisions of either of the above mentioned articles is based upon the conclusion that to apply such statutes to this concern would amount to a holding that the charter thereof has been repealed by legislation enacted since its incorporation. This is because it obviously can not operate at all under either of such statutes.

Of course under the provisions of Article 1318, R. C. S., 1925, the Legislature has power to "alter, reform or amend," any corporate charter. However, it is our opinion that none of the laws enacted since this association was incorporated were intended to repeal its charter. Certainly no act directly repealing it has been enacted and charter repeals by implication are not favored. 14-A C. J., p. 1102, par. 3697.

It is evident that this concern cannot operate if it is re-

quired to conform to either Article 4732 or Article 4736. This we shall now proceed to demonstrate.

Article 4732 reads as follows:

"No policy of life insurance shall be issued or delivered in this State, or be issued by a life insurance company organized under the laws of this State, unless the same shall contain provisions substantially as follows:

"1. That all premiums shall be payable in advance either at the home office of the company or to an agent of the company upon delivery of a receipt signed by one or more of the officers who are designated in the policy.

"2. For a grace of at least one month for the payment of every premium after the first, which may be subject to an interest charge, during which month the insurance shall continue in force, which may stipulate that if the insured shall die during the period of grace, the overdue premium will be deducted in any settlement under the policy.

"3. That the policy, or policy and application, shall constitute the entire contract between the parties and shall be incontestable not later than two years from its date, except for non-payment of premiums; and which provision may or may not, at the option of the company, contain an exception for violations of the conditions of the policy relating to naval and military services in time of war.

"4. That all statements made by the insured shall in the absence of fraud be deemed representations and not warranties.

"5. That if the age of the insured has been understated, the amount payable under the policy shall be such as the premium paid would have purchased at the correct age.

"6. That after three full years premiums have been paid, the company at any time while the policy is in force, will advance upon proper assignment of the policy and upon the sole security thereof at a specified rate of interest a sum equal to, or at the option of the owner of the policy less than, the legal reserve at the end of the current policy year on the policy and on any dividend addition thereto, less than a sum not more than two and one-half per cent of the amount insured by the policy, and of any dividend additions thereto; and that the company may deduct from such loan value any existing indebtedness on the policy and any unpaid balance of the premium for the current policy year, and may collect interest in advance on the loan to the end of the current policy year, which provision may also provide that such loans may be deferred for not exceeding six months after application therefor is made. It

shall also be stipulated in the policy that failure to repay any such advance, or to pay interest, shall not void the policy until the total indebtedness thereon to the company shall equal or exceed the loan value. No condition other than as herein provided shall be exacted as a prerequisite to any such advance. This provision shall not be required in term insurance, nor in pure endowments issued or granted as original policies, or in exchange for lapsed or surrendered policies. No provision herein shall compel any company to loan on any policy an amount greater than ninety-seven and one-half per centum of the face value thereof, including net dividend additions thereto.

"7. A provision which, in event of default in premium payments, after premiums shall have been paid for three full years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy, and on any dividend additions thereto, specifying the mortality table and rate of interest adopted for computing such reserve, less a sum not more than two and one-half per cent of the amount insured by the policy and of any existing dividend additions thereto, and less any existing indebtedness to the company on the policy. Such provisions shall stipulate that the policy may be surrendered to the company at its home office within one month from date of default for a specified cash value at least equal to the sum which would otherwise be available for the purchase of insurance, as aforesaid, and may stipulate that the company may defer payment for not more than six months after the application therefor is made. This provision shall not be required in term insurance.

"8. A table showing in figures the loan values, and the options available under the policies each year, upon default in premium payments during the first twenty years of the policy or the period during which premiums are payable, beginning with the year in which such values and options become available.

"9. That if, in event of default in premium payments, the value of the policy shall be applied to the purchase of other insurances; and if such insurance shall be in force and the original policy shall not have been surrendered to the company and canceled, the policy may be reinstated within three years from such default upon evidence of insurability satisfactory to the company and payments of arrears of premiums with interest.

"10. That when a policy shall become a claim by death of

the insured, settlement shall be made upon receipt of or not later than two months after due proof of death and the right of the claimant to the proceeds.

"11. A table showing the amounts of installments in which the policy may provide its proceeds may be payable.

"Any foregoing provision not applicable to single premium policies, shall, to that extent, not be incorporated therein."

A reading of the above Article demonstrates that this association, in the very nature of things, cannot comply with Sections 1, 6, 7, 8, 9 and 11. Any attempt to apply these sections would certainly destroy the charter. Furthermore a reading of the first, or opening clause of the Article, demonstrates a legislative intent to apply all the provisions thereof to all concerns coming under the terms of such opening clause. It is evident that the Legislature could not have intended part of the provisions of this Article to apply to an insurance company and others not to apply. Such a construction would lead to interminable confusion.

It is equally as evident that this concern is not governed by Article 4736, supra. That Article reads as follows:

"In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss."

Obviously the application of the above statute to this association would destroy it. It has no capital stock, no surplus and makes no profit. The only claim a beneficiary has against the association is the right to require it to levy an assessment on the surviving members after the death of the certificate holder whose beneficiary he is. The association does not even guarantee that such assessment will be paid, and, under the contract the amount of the assessment is fixed. If the association should be required to pay a twelve per cent penalty, and an attorney fee there is no provision in the charter or the contract whereby the money can be secured to pay the same, and we will not indulge the presumption that the Legislature intended to create a liability where no means are provided by law to meet it.

The certificate of the Court of Civil Appeals shows that the appellant signed his mother's name to this application for her membership in the instant association, naming himself as beneficiary. We presume from the certificate and the record that the mother had nothing whatever to do with the transaction. The application so made by the appellant in his mother's name stated that she was in good health and not suffering from any cancer; that she had never had a cancer; that she had never been refused insurance by any company; and was not under the treatment of any physician. All these statements were grossly and knowingly false and fraudulent on the part of appellant. In fact the record shows that appellant's mother died from a malignant cancer thirteen days after this policy was issued and that she had been suffering with such cancer for months prior to and at the time the application was made. Furthermore, the record shows that appellant's mothed was in very bad health, that she had theretofore been refused insurance, and was then under the treatment of a physician. In fact all of the statements above mentioned so made by appellant were grossly and knowingly false and fraudulent on his part.

Section 3, of Article 4732, supra, provides that the policy, or policy and application, shall constitute the only contract between the parties, and shall be incontestable not later than two years from its date, etc. This statute certainly has reference to cases where there is a contract between the insured and the insurer. If the insured never made any application to the association for insurance, either by making the application herself, or authoriizng another to do so for her, then there never was a contract between the insured and the insurer and the statute above quoted could not have application at all. Cooley's Briefs on Insurance, 2nd Ed., vol. 5, p. 4488. We quote the following from that authority:

"Moreover public policy requires that the clause be limited to legitimate policies actually taken out by the insured for the protection of his named beneficiary. Hence, where several persons conspired to defraud insurance company by securing policy in name of nominal beneficiary, for their own benefit, upon the life of a man who was then ill, and the policy was issued through fraud in the medical examination, and one conspirator took assignment of the policy from the nominal beneficiary, he was not a good-faith purchaser, and was not entitled to benefit of incontestability clause. (People v. Alexander, 183 App. Div., 868, 171 N. Y. S., 881, motion to dismiss

appeal denied 224 N. Y., 733, 121 N. E., 883, and judgment affirmed 225 N. Y., 717, 122 N. E., 887)."

■ We are further of the opinion that even if it be admitted that the mother of this appellant authorized him to sign her name to an application for membership in this association, and name himself as beneficiary, a fact not shown by the record, still it will not be presumed that she authorized him to make false and fraudulent statements therein, and when he did so for his own benefit, so far as his rights are concerned, he acted outside the scope of his authority, contrary thereto, and against the interests of both the insured and the insurer. Certainly it cannot be said that the two year incontestabilty statute, supra, was enacted to aid the beneficiary in such a case.

We recommend that all of the questions certified be all answered "No."

The opinion of the Commission of Appeals answering the certified questions is adopted, and ordered certified.

C. M. Cureton, Chief Justice.

ON MOTION FOR REHEARING.

Appellant calls our attention to the fact that we erroneously stated in our original opinion that appellee was incorporated in 1895, when the record shows that it was incorporated in 1905. We acknowledge the error. It is immaterial.

■ Appellant contends that under the provisions of Article 5049, R. C. S., 1925, the application for the policy here sued on was not admissible in evidence, because not attached to the policy. This contention is overruled. It is settled that Article 5049 has no application to life insurance policies issued after December 31, 1909. American National Insurance Co. v. Welsh, 22 S. W. (2d) 1063 (Com. App.); First State Prudential Ins. Co. v. Pedigo, 50 S. W. (2d) 1091 (Com. App.).

■ Appellant contends that appellee should be governed by Articles 4732 and 4736, R. C. S., 1925, because it is so conducted as to make a profit for O. B. Parot, its president and general manager. As shown by our original opinion, appellee is incorporated as a mutual relief association, "and not for profit, and it shall have no capital stock." If it violates its charter by making a profit for its president and general manager, the State would ordinarily be the only party concerned. Certainly the appellant would have no interest in the matter.

Also in regard to the issue of profit, the record shows that a

certain amount is annually paid into appellee's expense fund. O. B. Parot conducts its affairs under an agreement with the board of directors by the terms of which all expenses of operation, other than his services, are first paid out of the above expense fund, and he receives the balance remaining in payment for his services. The record does not show what appellee's annual expenses are, nor the amount paid to Parot. Furthermore, it is not shown what would be a reasonable compensation for Parot's services. Such a record is not legally sufficient to raise the issue as to whether this association is being conducted for Parot's profit.

■ Finally, should we treat appellee as a life insurance company governed by all the provisions of Articles 4732 and 4736, R. C. S., 1925, still the questions certified by the Court of Civil Appeals in this case should stand answered as recommended in our original opinion, because, as shown by the undisputed record in this case, there never was a contract of insurance between Mrs. Logan, deceased, the named insured, and appellee, the named insurer, for any statute to apply to. This matter has been fully discussed in our original opinion and we still adhere to that holding.

We have given this case unusual consideration both on original submission and on rehearing, and, in our opinion it has been correctly decided. We therefore recommend that appellant's motion for rehearing be in all things overruled.