HARRIS et al. v. TRAVELERS INS. CO.
No. 7698.

Circuit Court of Appeals, Fifth Circuit.

Dec. 5, 1935.

J. S. Bracewell, of Houston, Tex., for appellants.

Albert P. Jones, of Houston, Tex., for appellee.

Before FOSTER and SIBLEY, Circuit Judges, and DAWKINS, District Judge.

SIBLEY, Circuit Judge.

The suit is upon a policy of life insurance issued by Travelers Insurance Company payable to the executors, administrators, or assigns of the insured, David Harris. Each side moved for an instructed verdict and the court instructed it for the insurer and the plaintiffs appeal. The case turns mainly upon the effect of two writings, one an "inspection receipt" held by the insurance company and signed by Harris which reads: "March 11, 1931. Received of Theo Browning, agent of The Travelers Insurance Co., Hartford, Conn., Policy No. 1624162 upon my life for inspection only. This policy shall not take effect or be in any way binding upon the Company until the premium therefor is actually paid while I am in good health in so far as I have knowledge or information and this receipt is exchanged for the premium receipt signed and countersigned as provided in the policy." The other is a clause in the policy as follows: "Incontestability—This contract shall be incontestable after it shall have been in force for a period of one year from its date of issue except for non-payment of premiums and except for violation of the conditions of the contract relating to military or naval service in time of war if such service shall be restricted by indorsement hereon at date of issue." It was proven without dispute that Harris was shot and died April 21, 1931. On February 25, 1931, he made written application for the insurance policy to be dated February 20, 1931, with an oral understanding that he might inspect the policy if issued and decide whether to take it. The policy was issued on March 4, 1931, but stated that its effective date was February 20, 1931. The local agent Browning handed it on March 11th to Harris under the inspection receipt above quoted, neither collecting any premium nor extending any credit for it, and himself retaining the premium receipt which had been sent out with the policy. Harris was told that he had sixty days in which to decide whether he would accept the policy. On and several times prior to April 17th Browning asked Harris what he was going to do, and Harris each time said he had reached no decision. Harris told another witness that he was trying to return the policy to Travelers Insurance Company without making Mr. Browning feel unkindly toward him. After the death of Harris, the policy was found among his papers. He customarily paid his debts by check and preserved his canceled checks, and none was found showing any payment for this insurance. Browning never collected the premium nor did Harris ever agree with him to pay it. Claim was made under the policy and rejected by the company on the ground that the insurance had never been of force. Suit was filed, apparently in 1934, and on October 8, 1934, the company filed its defense that the policy had been taken for inspection only, that no premium was ever paid or credit extended for it, and the policy never took effect.

A contract of insurance may arise without the delivery of the policy or prepayment of the premium if the parties so intend. The application of Harris, however, stipulated: "The contract issued hereupon shall not take effect unless the first premium shall be actually paid while I am in good health in so far as I have knowledge or information. * * * That no agent can make, alter or discharge any contract issued on this application or extend the time for payment of premiums on such contract. * * *" No contract, therefore, was closed by the issuing of the policy. The application also stated: "I have paid to ―――― the sum of ―――― Dollars and hold his receipt bearing the number imprinted hereon." This does not prove, as is contended, that a premium was paid, but the unfilled blanks rather show that nothing was paid. The blanks at least are an ambiguity, Crisp County v. Groves & Sons (C.C.A.) 73 F.(2d) 327, 96 A.L.R. 391, and the parol evidence is clear that no payment was ever made or agreed to be made, and that the agent Browning at all times held the premium receipt. That the loan of the policy for inspection, even when

no written evidence of the transaction exists, does not make the prospective insured liable for the premium nor the company liable as insurer, we held in Bostick v. New York Life Ins. Co., 284 F. 256, and again in American Ins. Union v. Lowry, 62 F.(2d) 209. See, also, Hartford Fire Ins. Co. v. Wilson, 187 U.S. 467, 23 S.Ct. 189, 47 L.Ed. 261, and Burke v. Dulaney, 153 U.S. 228, 14 S.Ct. 816, 38 L.Ed. 698. Here the loan is evidenced by a written instrument which is itself the existent contract and dominates this phase of the negotiation. Nothing happened to alter its effect or to estop either party from claiming its protection. Under it the company could claim no premium from Harris and Harris could claim no insurance. No contract of insurance had been made, nor any consideration for one been afforded at the date of his death. Though no right to recover on the policy existed then, one is now asserted to exist by the operation of the incontestability clause. It is said that by allowing the policy to remain uncanceled in the hands of these plaintiffs for a period beyond two years from its date the company is barred from denying that it was ever a contract. This result would be most astonishing, considering that neither Harris nor his representatives have ever paid or owed anything for the insurance or have ever been in any respect misled about it, and Harris over his own signature has disclaimed any acceptance of the contract. This is not a contest whereby for original fraud or breach of condition a policy which has been supposed of force is sought to be canceled. It is a case where the insured has never supposed or claimed that he was insured. There was nothing to cancel. If the policy never was accepted, none of its provisions, including that for incontestability, ever became of force.

Yet further, the case is not within the terms of the clause relied on, for it says: "This contract shall be incontestable after it shall have been in force for a period of one year from its date of issue except for nonpayment of premiums. * * *" The language differs from that of the clause applied in Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102, but assuming as was there held that the time limit runs from the date of the policy and continues to run after the death of the insured, and giving no spe-

cial significance to the words "contract * * * in force," nevertheless a contest for nonpayment of premium is not barred. The evidence demands—it certainly authorized—the finding of fact that no premium was ever paid either in money or by an extension of credit. Both the application and the policy contain the usual provisions requiring prepayment of premiums, allowing a grace period on all premiums except the first, and giving extended insurance after the second year, but otherwise annulling the insurance for nonpayment. The application very clearly states that the policy is not to take effect until the first premium is paid, and the policy recites that such payment is to be made on its delivery. The defense that payment was never made nor waived nor extended is not barred by the incontestability clause, because excepted from it.

We find no merit in the contention that the inspection receipt and the oral evidence about the premium never having been paid or waived or the policy accepted were inadmissible because of the provisions of the policy and of article 4732 (3), Revised Statutes of Texas 1925, to the effect that the application and policy shall constitute the entire contract between the parties. These provisions control in construing and applying a valid contract, but they do not control the effort to show that no contract ever came into being. American National Ins. Co. v. Smith (Tex.Civ.App.) 13 S.W.(2d) 720; Wright v. Federal Life Ins. Co. (Tex.Com.App.) 248 S.W. 325; Logan v. Texas Mutual Life Ins. Ass'n, 121 Tex. 603, 51 S.W.(2d) 288, on rehearing 121 Tex. 614, 53 S.W.(2d) 299.

While we have found no case in point on the effect of the incontestable clause upon a defense of no contract under an inspection receipt, the case last cited held that a defense that no contract ever existed because the policy was based on a forged application was not so defeated. So in Ludwinska v. John Hancock Mutual Life Ins. Co., 317 Pa. 577, 178 A. 28, 30, where a similar imposture was practiced a defense was allowed against the incontestable clause, the court saying: "Without this [someone capable of contracting] neither the incontestable clause contained in the policy nor the policy itself have any life. The clause can rise no higher than the policy; the incon-

testable clause cannot of itself create the contract." The expressions of these courts, while not the whole basis of the decisions, tend to uphold our view that there is no. effective incontestable clause when the policy is clearly shown never to have been accepted by the insured in his lifetime as a contract. No error appearing, the judgment is affirmed.