Rue Ann ADAMSON,
Plaintiff-Appellee,

v.

HOME LIFE INSURANCE COMPA-
NY, Defendant-Appellant.

No. 74–1995.

United States Court of Appeals,
Fifth Circuit.

Feb. 21, 1975.

John E. Agnew, Joe Hill Jones, Dallas, Tex., for defendant-appellant.

Howard V. Tygrett, Jr., Dallas, Tex., for plaintiff-appellee.

Before DYER, MORGAN and GEE, Circuit Judges.

GEE, Circuit Judge:

In this Texas diversity case, Rue Ann Adamson seeks to recover on a policy of

insurance issued her deceased husband, George A. Adamson. Finding the jury reached the proper result, we affirm.

On April 20, 1971, George A. Adamson applied for insurance with Home Life Insurance Company. The application included the question:

Have you flown as a·pilot, crew member or student pilot within the past three years or do you contemplate such flights?

The jury found that Adamson told Home Life agents that he had flown as a pilot to some extent. There is disputed evidence as to whether the agents advised Adamson to answer in the negative since his "limited" flying activities would not bring him within the policy definition of pilot. In any case, Adamson did respond negatively to the question and signed the application. Attached to the policy application was a medical examiner's report. Noted in the report were the facts that Adamson had been an Air Force pilot and that he had received annual physicals and electrocardiograms while in the Air Force. Also available to Home Life was a Retail Credit Company Special Narrative Life Report which, while stating on the one hand that Adamson had a past interest in aviation and no interest in hazardous sports, stated (if we may so loosely employ the term) on the other:

### AIVATION–HAZARDSOU SPORTS:

We learned of ninterest in the field of aivaton and we learned of interest in any hazardous sports.

The policy was issued. On November 6, 1972, George Adamson crashed while piloting a plane and was killed. Rue Ann Adamson, deceased's widow and beneficiary under the policy, sued Home Life Insurance Company for the proceeds, as well as a statutory penalty and attorney's fees.[1] Home Life answered and sought to avoid liability by charging that Adamson had fraudulently misrepresented his piloting activities. The case was submitted to a jury on interrogatories;

after the jury returned answers the court entered a judgment favorable to appellee Rue Ann Adamson. Home Life contests the results of the trial here.

Since the case was submitted to the jury on special interrogatories, our appellate task is eased. If we find that the evidence supports some controlling jury answers, we need look no further since the remaining answers would be without consequence. See In re Double D Dredging Co., 467 F.2d 468, 469 n. 2 (5th Cir. 1972); Dicks v. Cleaver, 433 F.2d 248, 252 n. 6 (5th Cir. 1970); 5A Moore's Federal Practice ¶ 49.02 (1974).

■ Starting then with what appellee maintains is an overriding issue, we find that the jury responded affirmatively to the following:

Do you find from a preponderance of the evidence that Defendant, Home Life Insurance Company, had sufficient information, excluding knowledge of the soliciting agents, Derrick and Perry, that the Deceased, George A. Adamson, had flown as a pilot within the 3 years preceding April 20, 1971 as would have put a prudent insurance company on notice and would have caused the insurance company to start an inquiry which, if carried out with reasonable thoroughness, would have revealed the truth?

Home Life Insurance Company attacks this submission as based on an erroneous theory of law and the jury finding as based on insufficient evidence. Appellant further contends the issue was a proper candidate for directed verdict. The theory involved—waiver or estoppel to raise the defense of fraudulent misrepresentation—has been considered by our court previously in a Texas diversity case. There we said:

With reference to allowing the jury to decide if Lincoln waived the fraudulent misrepresentations by not following up its leads, this court in Apperson v. United States Fidelity & Guaranty Co., 318 F.2d 438, 441 (5th Cir. 1963), held:

death benefits was abandoned before submission to the jury.

1. As authorized by Texas Insurance Code, Art. 3.62, V.A.T.S. A claim for accidental

"The mere fact that the insurer makes an independent investigation . . . does not absolve the applicant from telling the truth nor lessen the right of the insurer to rely upon his representations, UNLESS THE INVESTIGATION either discloses the falsity of the representations or DISCLOSES FACTS WHICH WOULD PUT A PRUDENT PERSON ON FURTHER INQUIRY." (Emphasis added.)

Jefferson Amusement Co. v. Lincoln National Life Ins. Co., 409 F.2d 644, 650 (5th Cir. 1969). *See also* Guardian Life Ins. Co. of America v. Eagle, 484 F.2d 382, 384 (5th Cir. 1973).[2] The instruction correctly submits the theory to the jury. Also, there was sufficient evidence to allow submission. This being so, "it is the clear rule in this Circuit that questions concerning the diligence and justified reliance of an insurance company are issues of fact to be governed on appeal by the clearly erroneous standard." Guardian Life Ins. Co. of America v. Eagle, *supra*, 484 F.2d at 384.

▮ Mr. Cunningham, head of Home Life's underwriting department but not the underwriter who approved issuance of the policy, testified to company reliance on Adamson's application, the medical examiner's report and the Retail Credit Company Special Narrative Life Report in deciding whether to issue the policy. Given the information in the medical examiner's report about Adamson's earlier piloting activities and the ambiguity of the credit report, we cannot say that the jury was clearly erroneous in concluding that the insurer had such notice as would lead a prudent person to look further, despite Cunningham's own interpretation of the material. Further there is evidence to support a finding that the investigation would have revealed the truth. It was company practice to have an applicant complete an aviation supplement if indications were he was a pilot. Further, there is testimony in the record, and the jury found, that Adamson had told the insurance agents about his piloting experience.[3] The jury could have reasonably inferred that Adamson would have likewise filled out the aviation supplement correctly. Adamson's piloting activities were hardly of a sort which would have been easily concealed or peculiarly within the knowledge of Adamson. The jury finding is based on sufficient evidence; no directed verdict or judgment n.o.v. was appropriate.

▮ Having so concluded, we need not deal with the remaining jury answers. They deal with the issue of fraudulent misrepresentation, an issue assumed for the purpose of determining waiver.[4]

---

2. A very recent Texas case supports the proposition that waiver can be found if the insurer has such notice as would necessitate additional inquiry. Johnson v. Prudential Ins. Co. of America, 506 S.W.2d 238, 245 (Tex.Civ.App.—San Antonio 1974, writ granted). *See also* Trice v. Georgia Home Ins. Co., 81 S.W.2d 1055, 1057 (Tex.Civ.App.—Amarillo 1935, no writ) (" 'Actual knowledge of facts forfeiting a policy is not necessary to a waiver, . . . if attending circumstances are of such nature as to put a prudent person on his guard.' ") and Maniatis v. Texas Mutual Life Ins. Co., 90 S.W.2d 936 (Tex.Civ.App.—Waco 1936, no writ) ("suspicious circumstances").

3. This testimony was contested, but the jury was entitled to credit it.

4. We, the Jury, return our answers to the following questions as our verdict in this case.

QUESTION NO. 1:
   Do you find from a preponderance of the evidence that George A. Adamson knew that the "No" answer to the question "Have you flown as a pilot, crew member or student pilot within the past 3 years or do you contemplate such flights?" on the application signed by him was false?
   ANSWER:
   [ ]  He did so know.
   [x]  He did not so know.
QUESTION NO. 2:
   Do you find from a preponderance of the evidence that the negative answer to the question "Have you flown as a pilot, crew member or student pilot within the past 3 years or do you contemplate such flights?" on the application of insurance signed by George A. Adamson was made with the intent to induce Home Life Insurance Company to act on it?

Also, we need not consider whether in this case the agents' knowledge could be imputed to the company in the first instance,[5] their knowledge being specifically excluded from the waiver question.

Since the issue of knowing misrepresentation has no effect on the outcome of the case, the trial court's exclusion from evidence of the report detailing the circumstances of Adamson's crash is not harmful to Home Life, even if error.

■ Finally, Home Life claims that the trial court erred in awarding Rue Ann Adamson attorney's fees. Article 3.62 of the Texas Insurance Code provides:

> In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve (12%) per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss. Such attorney fee shall be taxed as a part of the costs in the case. The Court in fixing such fees shall take into consideration all benefits to the insured incident to the prosecution of the suit, accrued and to accrue on account of such policy. Acts 1951, 52nd Leg., ch. 491.

Home Life contends it is a mutual company and not subject to 3.62 under Texas case law. We do not agree. The Texas cases cited by appellant refer only to mutual assessment companies,[6] not mutual life insurance companies, such as Home Life.[7] Further, the exemption no longer exists for statewide mutual assessment associations. Tex.Ins.Code Ann. art. 3.62–1. In Texas, mutual life insurance companies are governed by Chapter 11 of the Insurance Code. Article 11.19 of that chapter expressly allows application of provisions of Chapter 3, wherein appears Article 3.62, to mutual life insurance companies unless they conflict with provisions of Chapter 11. We see no such conflict. *See* John Hancock Mutual Life Insurance Co. v. Schroder, 349 F.2d 406 (5th Cir. 1965). Award of attorney's fees was proper. Accordingly,

---

ANSWER:
[x] It was made with such intent.
[ ] It was not made with such intent.
QUESTION NO. 3:
Do you find from a preponderance of the evidence that the defendant Home Life Insurance Company relied in whole or in part upon the negative answer to the question "Have you flown as a pilot, crew member or student pilot within the past 3 years or do you contemplate such flights?" by George A. Adamson on the application of insurance signed by him?
ANSWER:
[x] It did so rely.
[ ] It did not so rely.
QUESTION NO. 4:
Do you find from a preponderance of the evidence that the negative answer to George A. Adamson to the question "Have you flown as a pilot, crew member or student pilot within the past 3 years or do you contemplate such flights?" on the application signed by him, was material to Home Life Insurance Company's risk?
ANSWER:
[x] It was material.
[ ] It was not material.

---

5. *See* Odom v. Insurance Company of State of Pennsylvania, 455 S.W.2d 195 (Tex.1970). This does not preclude our considering the agents' knowledge, as we have done, for purposes of determining what the results of an independent inquiry would be.

6. The rationale for the exemption turned on the nature of a mutual assessment company. *See*, e. g., Logan v. Texas Mut. Life Ins. Ass'n, 121 Tex. 603, 51 S.W.2d 288, 292 (1932, opinion adopted).

7. Home Life admitted in its answer that it was a life insurance company. The term "mutual" appears on the face of the policy. We note that Texas courts had placed the initial burden on the defendant insurer to plead and prove that it was a mutual assessment company. Bankers Life & Loan Ass'n v. Jayroe, 133 Tex. 287, 127 S.W.2d 291 (1939, opinion adopted); Blue Bonnet Life Ins. Co. v. Robinson, 153 S.W.2d 200, 203 (Tex.Civ.App.—Fort Worth 1941, writ dism'd).

we affirm the trial court decision in all respects and remand for assessment of interest in conformance with the trial court's order.

Affirmed.